Argued July 30, decided October 13, 1908.

## STATE *v.* REED.

[97 Pac. 627.]

ELECTIONS — "GENERAL ELECTIONS" — OFFENSES — STATUTES—CONSTRUCTION.

f. Under Local Option Law (Sess. Laws 1905, p. 44), providing for a local option election on the first Monday of June of any year, to be held at the regular voting places and by the regular judges and clerks of election, and declaring that Section 1907, B. & C. Comp., shall be applicable to such elections, a local option election held during a year in which the general election is held, is a "general election" within Section 1907, providing that any person who shall induce another to come into any precinct with intent that he shall vote at any general election, at a place where he is not a resident, shall be

punished, and proof that the accused induced a voter to remove into a precinct of which he was not a resident, to vote on the liquor question at the general election of the year, and that the voter voted, not only on the liquor question. but for the State, district, county, and precinct officers also, showed a violation of the statute.

SAME.

2. The purpose of Section 1907, B. & C. Comp., providing that one who shall induce a voter to come into any precinct with intent that he shall vote at any general election, at any place where he is not a resident, shall be punished, is to prevent colonization of voters; and hence the inducing of a voter to remove into any precinct of which he is not a resident, with the intention of voting there, by the use of the ballot provided for, and in use at the general election, constitutes the gravamen of the offense.

SAME—EVIDENCE.

3. On a trial for inducing a voter to come into a precinct with intent that he shall vote therein, at a general election, in violation of Section 1907, B. & C. Comp., the issue is whether the voter was persuaded by accused to go into the precinct with such intention, and whether such a precinct was one in which the voter was not previously a resident, and evidence of legal advice received by accused or of precautions he took to ascertain whether, by making the change, the voter would be a legal voter in such precinct, is immaterial.

CRIMINAL LAW—TRIAL—CONDUCT OF COURT.

4. The judge, in the trial of a criminal case before a jury, should not express his personal views or feelings as to the guilt or innocence of accused.

SAME—HARMLESS ERROR.

5. Where the facts constituting a violation of Section 1907, B. & C. Comp., providing that one who shall induce a voter to come into a precinct, with intent that he shall vote at an election at a place where he is not a resident, shall be punished, were not only established by the State, but conceded by accused, the misconduct of the trial judge, consisting of expressions of his opinions as to the guilt of accused, was within Section 1484, requiring the court on appeal to give judgment regardless of technical errors, since under the express provisions of Section 857, subd. 1, the power of the jury to pass on the effect of evidence is not arbitrary, but must be exercised with legal discretion.

SAME—HARMLESS ERROR—ERRONEOUS ADMISSION OF EVIDENCE.

6. Where the facts essential to a conviction, under Section 1907, B. & C. Comp., providing that one inducing a voter to come into a precinct with intent to vote at a general election at a place where he is not a resident shall be punished, were established by the State and conceded by accused, the error, if any, in admitting evidence that accused induced other persons to go into the precinct at the same time, and for the same purpose, was within Section 1484, requiring the court on appeal to disregard technical errors.

SAME—INSTRUCTIONS—ASSUMPTION OF FACTS.

7. It is not prejudicial error for the court to give to the jury the conceded facts and the law applicable thereto, and remarks of the court, correctly stating the law and application of admitted facts thereto, though given in an improper manner, and calculated to convey to the jury its belief of the guilt of accused, cannot be presumed prejudicial, unless it appears that as to some of the essential elements of the crime, there was some dispute as to the facts essential to establish the crime.

SAME—INSTRUCTIONS—OBLIGATIONS OF JURY.

8. It is the duty of the court in a criminal case to instruct the jury as to the law, and it is the duty of the jury to apply the facts found by it to the law as given by the court.

SAME—DIRECTION OF VERDICT—AUTHORITY OF COURT.

9. In a criminal case, after a plea of not guilty, the court cannot direct a verdict for the State, however clear the proof of guilt may be.

SAME—NEW TRIAL—AUTHORITY OF COURT.

10. Under Constitution of Oregon, Art. I, §§ 12, 16, providing that no person shall be put in jeopardy twice for the same offense, and the jury in criminal cases shall have the right to determine the law and the facts, under the direction of the court as to the law, the jury in a criminal case may return a verdict of not guilty, however clear the proof of guilt may be, and the court is without power to order a new trial by reason thereof.

SAME—PRESUMPTIONS.

11. The presumption is that juries do their duty, and the court on appeal must assume that a jury found in accordance with the law, and conceded facts under the interpretation of the law as given by the court.

From Multnomah: ARTHUR L. FRAZER, Judge.

J. W. Reed was indicted, tried and convicted of vio-
lation of the election laws. From the judgment and
sentence following such conviction defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of
*Mr. William T. Muir* and *Mr. Ralph E. Moody,* with
oral arguments by *Mr. Muir* and *Mr. Moody.*

For the State there was a brief over the names of
*Mr. Andrew M. Crawford,* Attorney General, and *Mr.
Isaac H. Van Winkle,* Assistant Attorney General, with
oral arguments by *Mr. Crawford* and *Mr. George J.
Cameron,* District Attorney.

Opinion by MR. COMMISSIONER KING.

J. W. Reed was indicted on a charge of having per-
suaded Harry Young, June 3, 1906, to remove to precinct
No. 37, of Multnomah County, in which precinct he was
not then an inhabitant, for the purpose of his voting
therein at a general election, to be held throughout the
State of Oregon on the following day. A trial was had
in December of the same year, resulting in defendant's
conviction and sentence; hence this appeal.

1. The section of the Code under which Reed was indicted became a law in 1870 (Laws 1870, p. 22, § 1), and is as follows:

"Any person who shall by promise of favor or reward, or otherwise, induce or persuade any person to come into this state, or into any county or precinct within this state, for the purpose and with the intent that such person shall, by so changing his habitation, vote at any general election which may hereafter be held in this state, at any place where such voter or person is not a *bona fide* resident, shall be deemed guilty of a felony, and upon conviction thereof shall be punished as hereinafter provided": Section 1907, B. & C. Comp.

Subsequently there was passed what is known as the "Local Option Law," recorded in Session Laws 1905, p. 44, section 5 of which reads:

"The provisions of Section 1907 * * of Bellinger & Cotton's Annotated Codes and Statutes of Oregon shall apply to and are hereby made applicable to all elections held under the provisions of this act."

The act further provides that after the year 1904, all elections held under the provisions thereof shall be held on the first Monday in June of any year, and "shall be held at the regular voting place or places within the proposed limits and by the judges and clerks of election appointed and qualified under the general election laws of the state. * *" making the election laws governing general elections, so far as practicable, applicable thereto.

2. At the trial the state proved, among other things, that defendant induced Young to remove to precinct No. 37, of which he was not a *bona fide* resident, the night before election, paying his expenses, for the purpose of voting on the liquor question at the only election held on that day throughout the state, and that he voted accordingly, not on the contemplated question alone, but on the state, district, county and precinct offices as well. This was testified to by Harry Young,

as well as by defendant when called in his own behalf. At the close of the taking of the testimony on behalf of the state, defendant moved the court to instruct the jury to direct a verdict in his favor, alleging, in support thereof, a variance between the proof and crime charged, which motion was denied. This denial, *inter alia,* is assigned as error. In support of this assignment it is strongly urged that the purpose of Reed's solicitation for Young's change of locality was to vote at the special election, called on that day for a special purpose; and, although to be held at the same time and place of the general election, the proof to such effect is at variance with the charges made in the indictment, for which reason it is maintained that all evidence adduced, tending to show that a special election was called at that time and place, and that Young was persuaded by defendant to go into the precinct for the purpose indicated, and that he did vote thereat, should have been excluded, and a verdict directed for defendant. It is admitted that the purpose of thus inducing Young to remove into the precinct, was to vote on the question as to whether local option should prevail in that precinct, or, to use defendant's language, was that he "would vote to keep precinct No. 37 wet." Now conceding, as contended, that the election called for the purpose of voting on this question was special (*Marsden* v. *Harlocker,* 48 Or. 90: 85 Pac. 328: 120 Am. St. Rep. 786), the only bearing this feature had on the case was that, when it was shown that the various steps required by the act were duly taken, it established that the question was thereby entitled to be placed upon the ballot to be voted upon at the general election to be held on that day, for which purpose the testimony complained of was admissible.

3. Under the provisions of the local option act (Session Laws 1905, p. 43, § 3), an election can be held on the first Monday of June of any year, while the gen-

eral elections occur biennially on the first Monday of
that month. When, therefore, a special election is called
to vote upon the liquor question, during a year in which
the general election may be held, and all the steps
essential to the placing of the question to be submitted
upon the ballot are duly taken, and the proposition
submitted is placed upon the ballot, the election at which
such ballot may be used and vote cast is the general
election held by the various officers provided for under
the general statutes on the subject; while if held during
any other year, it has no reference thereto, and is spe-
cial in its fullest sense. The provision contained in
Section 5 of the local option act, making Section 1907
of the Code applicable to that act, was intended to pre-
clude one, charged with persuading voters to remove
into another precinct, for the purpose of voting at such
election, from defending, on the ground, as here as-
serted, that it was special, and not general, without
which such defense would have been available if such
special election was held during any year other than
that in which a general election may be held. But so
far as applicable to an election held, as in this case, on
the same date as the general election, it is merely
declaratory of what the law would have been without
this provision inserted therein. The two elections, in
this instance, were not held or conducted separately,
and no method is provided whereby a person may vote
at one and not at the other, any more than for a person
to vote for one candidate and not for the whole ticket.
Such is possible, it is true, but there is no method pro-
vided whereby it can legally be determined how the
person may vote; and it is not to be presumed that,
when a voter changes his precinct to vote in some special
locality, although on account of some special question,
he will vote on no other question, nor for any of the
state, district, or county candidates, when the particular
question to be submitted is upon the same ballot.

Although defendant's primary object in persuading Young to make the change; as well as Young's main purpose, was to vote on prohibition, it was with full knowledge, by law implied, that, during that year, only by voting at such general election could he vote on the question in mind. When he thus exercised his electoral franchise, regardless of whether he voted upon but one question or upon many, or for the entire ticket, he was precluded from voting at any other polling place in the state or county at that election, thus bringing the acts charged, established, and admitted, clearly within the purview of Section 1907 of the Code. It is obvious, therefore, that when the statute made it an offense to persuade a voter to change his habitation for the purpose of voting "at any general election," it was intended to include voting for any purpose at that time and at such election. The purpose of the statute is to prevent colonization of voters in the state, or in any county or precinct therein; hence the inducing of the voter to remove into any precinct of which he was not a resident, with the intention of voting there by use of the ballot provided for and in use at the general election, constistutes the gravamen of the offense. It was accordingly necessary, in the case under consideration, in order to justify the verdict rendered, only to show, beyond a reasonable doubt, defendant's intent to have the voter make the change of precincts for the purpose of voting at the election on June 4, and that such change was made; and such was the effect of the proof submitted by the state and of the facts admitted by the defense. It accordingly follows that the indictment charges sufficient facts, which are sustained by ample proof, to constitute the crime charged, under Section 1907 of the statute.

The defense further insists that when Young removed to precinct No. 37 before election, having lived within the state the required time, he became a resident of that

precinct, and accordingly a legal voter therein, and was
entitled to vote at such election, and that if not entitled
thereby to vote, he was so advised by good lawyers,
and intended no crime, which he was not permitted to
prove, by reason of which error is alleged. The ques-
tion whether Young, by going into the precinct and
remaining over night, was qualified to vote there, is not
involved here. Importing voters is one crime, and ille-
gal voting is another. Defendant was indicted on the
former charge, and, as before stated, the gravamen of
the offense consisted in changing from his precinct to
another, of which he was not an inhabitant, with the
intention of voting therein; and when proved, the crime
charged was established, whether the vote cast by reason
of the change was legal or not. Nor was it necessary
that he should have voted at all, the question being, was
he persuaded by defendant to, and did he go there with
that intention, and was that a precinct in which he was
not previously a resident? It accordingly follows that
it was not material to the issues what advice, legal or
otherwise, defendant might have received, or what pre-
cautions he may have taken to ascertain whether by
making the change Young would become a legal voter
in the new precinct; for it was not a question as to
whether the defendant intended that his acts should
constitute a crime, but whether he intended to perform
the acts which by law are made the crime charged. To
hold otherwise would be to permit ignorance of the law
to be pleaded as a defense in criminal actions. The
evidence offered for that purpose was clearly inadmis-
sible, and was properly excluded.

4. Numerous other errors are assigned, for which a
reversal is sought; and briefly summarized are (1) that
for the purpose of showing an intent on the part of
defendant to persuade Young to change his residence,
in violation of Section 1907 of the Code, evidence was
admitted, showing that he had induced others to go into

the precinct at the same time, and for the same pur-
pose; (2) that the trial judge, during the progress of
the trial, in the presence of the jury, expressed his
opinion to the effect that the removal of Young and
others into precinct No. 37, in the manner and under
the circumstances testified to, did not entitle any of
them to vote; and that "it is so nonsensical that the
court cannot entertain at all that anybody would give
such advice in good faith," and that "no one of any
intelligence" would so advise or entertain such a thought
for a moment—that a "10-year-old boy" would know
better, etc.; (3) that after counsel for the defense had
offered to read to the jury the penalty for the crime
charged, and was prevented by the court, the judge
thereof remarked to defendant's counsel: "You keep
harping about the penalty, and because you do, I will
say right here that I understand the penalty may be
only a fine," and upon one of the counsel for the defense
adding that the penalty also carried with it a forfeiture
thereafter to hold office, the court interjected, "Which
can be removed by a pardon, and which, I believe, as
far as my experience goes, is generally removed," fur-
ther explaining that he made this remark to prevent
counsel from "playing upon the sympathies of the jury";
(4) that the court, among its instructions, told the jury
that the verdicts of juries are seldom set aside and new
trials ordered, and that "your findings on the facts of
any case will not be disturbed, unless, as has happened
in rare instances, it appears that there was a total dis-
regard of the facts on the part of the jury, or the jury
was laboring under some passion or prejudice, then it
is the province of the court to set aside the verdict and
grant a new trial. But I think I need not have men-
tioned that, because it only happens in very rare cases,
and I will not say more on that subject. But you are
the exclusive judges of the facts in this case, and your
findings of the facts will be conclusive." Other remarks

52 OR.— 13

of like import were made during the progress of the trial, but the above are sufficient to illustrate the points urged in this respect. The remarks were highly improper, and the manner in which they were used would, no doubt, impress the average jury with the belief that the court believed the defendant guilty, and in a case where there is any controversy as to the facts, or as to the conclusions deducible therefrom, would necessarily work to the prejudice of the accused. It is also apparent that he would have the jury know that, if they found the defendant guilty, they need have no fears that their verdict would be set aside. Defendant's counsel urge that the court, in effect, told the jury that if they found defendant not guilty, their verdict would be set aside, and a new trial ordered. But, while the remarks are possibly open to this construction, we think the above interpretation was the one intended and understood, especially in view of the closing remark of the court, informing the jury they were the exclusive judges of the facts, and their findings on the facts would be conclusive upon the court.

5. It is clear in this instance as well as in others alluded to, that the learned court below, in violation of both the letter and spirit of our statute, too frequently let its views and personal feelings creep into the trial of the case. Such a course should not be pursued in the trial of any cause before a jury in any court. As stated by Mr. Justice THAYER, in *State* v. *Clements,* 15 Or. 237, 245 (14 Pac. 410, 413) : "If there is any one virtue in the judicial mind entitled to superior excellence, it is patience to hear and determine matters involving the rights and liberties of those charged with the commission of a crime. It is the highest aim of the courts to insure parties arraigned at the bar of justice a fair and impartial trial, and to avoid the least semblance indicating that the prosecution is maintained through a spirit of vindictiveness." But in discussing this feature, Mr.

Justice GARY, an eminent jurist, in the case of *Kane* v. *Kinnare*. 69 Ill. App. 83, observes, in extenuation of the unguarded remarks of trial courts on such occasions, that from his experience of 25 years as a trial judge and in the trial of cases before juries, he had found that "one of the greatest difficulties of a *nisi prius* judge is to keep his mouth shut," in support of which he, in reversing the case mentioned, cites various cases in the appellate courts of that state, in which he, during the time he held such position, had been reversed on account of such difficulty.

6. But notwithstanding the remarks complained of were inappropriate, and not in harmony with the provisions of the statute governing the conduct of courts in trial of jury cases, we are confronted with the question as to whether the errors committed in this respect were prejudicial to defendant, or whether his rights have in any manner been impaired thereby. If answered in the affirmative, it becomes imperative that a new trial be granted; but if defendant by reason thereof has not been injured, it is clearly incumbent upon us, under Section 1484, B. & C. Comp., to affirm the judgment. The section of the Code alluded to provides that, "after hearing the appeal the court must give judgment, without regard to the decisions of questions which were in the discretion of the court below, or to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." Looking into the effect thereof, we find that all of the facts essential to constitute a crime under the indictment were not only established by the State, but conceded and testified to by defendant while on the witness stand, as well as admitted by his counsel throughout the argument.

7. It is conceded that Young was not a *bona fide* resident of the precinct to which he had removed on the eve of election; that he went there for the purpose of voting on the liquor question at the election to be held

on the following day, June 4th; that he was to use the same ballot, and vote at the same time and place, on that question as upon any other matters, including candidates for which or for whom he might desire to cast a ballot; and that, in consideration of having his hotel bill paid, was by defendant induced to go there for the purpose indicated. Under these facts the crime charged was completely established and admitted. True, counsel insist that no admission was made nor evidence given that Young was persuaded to vote at a general election; that the election was special, etc. But this is merely a refusal to admit the conclusion. The defendant concedes the facts which could lead to the one conclusion only, and that contrary to the contention insisted upon by him, which, as held, constituted the crime charged. The only question of intention involved was one of fact, being whether Reed intended to have Young change his habitation for the purpose of voting, and as to whether he intended that Young should do as he requested him to do. That such was his intention, defendant admitted throughout the trial; that is to say, he admitted procuring the change by Young, in order that he should vote in that precinct, at the election to be held on that date, to keep the precinct "wet." If there was any dispute on these facts, the remarks and instructions of the court complained of would be presumed prejudicial to defendant: *Matasce* v. *Hughes,* 7 Or. 39 (33 Am. Rep. 696) ; *State* v. *Morey,* 25 Or. 241 (35 Pac. 655, 36 Pac. 573). But, in view of the conceded facts, what difference could it have made in the verdict of the jury under the law? "Their power of judging of the effect of evidence is not arbitrary, but to be exercised with legal discretion, and in subordination to the rules of evidence": Section 857, subd. 1, B. & C. Comp. See, also, Sections 1409, 1410, B. & C. Comp.

8. It was the duty of the court to instruct the jury as to the law, and the duty of the jury to apply the

facts found by it to the law as given it by the court; and, unless they should have disbelieved the witnesses on the part of both the State and the defendant, as well as the defendant himself, they could not, consistent with their sworn duty as jurors, have found otherwise than as they did.

9. It is true that the court cannot, in a criminal case, after a plea of "not guilty" has been entered at the trial, direct a verdict for the State, however clear the proof of guilt may be: 6 Am. & Eng. Enc. Law (2 ed.), p. 983.

10. The jury in this case could have returned a verdict of not guilty if they had chosen to do so (Constitution Oregon, Art. I, § 16), and the court would have been without the power to order a new trial by reason thereof: Constitution Oregon, Art. I, § 12; 12 Cyc. 589, note 61, and cases thereunder; 11 Enc. Pl. & Pr. 61. But we cannot presume that the jury would have so violated its sworn duty as to have done so.

11. The presumption is that the juries do their duty, by reason of which we must assume in the case before us, that the jury would have found in accordance with the law and conceded facts, under the interpretation of the law as given it by the court, which could have led to but the one result mentioned. Had none of the proof, relative to others having been induced by defendant to go there also, been offered, the admissibility of which we do not determine, and had none of the remarks complained of been made, the result could not have been otherwise than it was, unless the jury had totally disregarded not only the law, of which it was the duty of the court to apprise them (*State* v. *Whitney*, 7 Or. 386, 391), but would have acted in total disregard of the conceded facts as well. Such were within the range of possibilities, but it would be a violent presumption indeed so to assume in order to predicate the error essential to a new trial of the cause. We think this case

comes within both the letter and spirit of Section 1484 of the Code above quoted.

In discussing the right of the court to narrate to the jury the admitted facts, Mr. Chief Justice KELLY, in *State* v. *Whitney*, said: "And unless clearly admitted to be true by the accused upon his trial, the court had no right to say to the jury that it was proven, however strong the testimony may have been." The court in that case had told the jury that Hibert, whose death was one of the subjects of inquiry, "was clearly proven by the State to have been killed in Marion County by a gunshot wound," in respect to which the court further say: "It was an objectionable instruction to assume that this fact was proven, as it was for the jury to say whether it was or was not. Although objectionable, it probably worked no injury to the defendant, for it appears in the fifth exception that he had admitted the fact that Hibert had been killed by a gunshot. And when this admission was made by him the court had a right to say to the jury that it was an admitted fact that Hibert was killed in that manner." It is thus apparent that, since instructions under such circumstances are permissible, remarks of the court correctly stating the law and application of the admitted facts thereto, although given in an improper manner, and calculated to convey to the jury its belief in defendant's guilt, cannot be presumed prejudicial, unless it appear that, as to some of the essential elements of the crime charged, there was at least some question or dispute as to the facts tending to establish the charge against the accused. It thus appears to be the settled policy in this State that it is not prejudicial error for the court to give to the jury the conceded facts and law applicable thereto. While, as indicated, the trial judge is not at liberty to express his personal views as to the guilt or innocence of the accused, and should not do so, and in the case in hand had more to say on the subject than was proper, it

would be difficult indeed, under the admitted facts, to see how the defendant could have in any manner been prejudiced thereby.

Finding no prejudicial error in the record, the judgment of the court below should be affirmed.

Affirmed.