Argued January 9, decided February 2, rehearing denied April 30, 1909.

## STATE *v.* WALTON.

[99 Pac. 431; 101 Pac. 389.]

INDICTMENT AND INFORMATION—MOTION TO QUASH—TIME FOR MAKING.
1. A motion to quash an information, made after demurrer thereto has been overruled, is too late.

DISTRICT AND PROSECUTING ATTORNEYS—POWER OF LEGISLATURE.
2. Since the office of prosecuting attorney is provided for and its duties defined, in part, by Section 17, Article VII, Constitution of Oregon, the legislature cannot abolish it nor abridge its constitutional duties.

DISTRICT AND PROSECUTING ATTORNEYS — DEPUTIES — POWER OF LEGISLATURE.
3. The legislature can provide for deputies to act in a prosecuting attorney's name and stead.

INDICTMENT AND INFOMATION—SIGNING—DEPUTIES—ACTS—VALIDITY.
4. The act of a deputy prosecuting attorney, whose appointment was authorized by Gen. Laws 1903 (Sp. Sess. p. 32), in signing and filing an information, was the act of the district attorney, and hence satisfies the requirement of Section 9, Article I, Constitution of Oregon, that a warrant shall issue only upon probable cause supported by oath or affirmation.

CRIMINAL LAW—PLEA OF FORMER JEOPARDY—SUFFICIENCY.
5. A plea that accused had already been tried and convicted of the crime charged, that he had been thereby put in jeopardy, and could not be legally tried, was insufficient both as a plea of former conviction or former jeopardy under the common law and under Section 1367, B. & C. Comp., prescribing the form of a plea of former conviction.

CRIMINAL LAW — RIGHT TO CONFRONT WITNESSES — TESTIMONY OF DECEDENT.
6. The Constitution of Oregon, Section 11, Article I, guaranteeing to accused persons the right to confront the witnesses, secures the right of cross-examination, and, if that has been once enjoyed, the provision is not infringed by admitting testimony given on a former trial by one who has since died or is absent from the State.

CRIMINAL LAW—TESTIMONY ON FORMER TRIAL—ADMISSIBILITY.
7. Section 1402, B. & C. Comp., requiring in criminal trials that testimony be given in the presence of the court and jury, except where taken by deposition under Sections 1379-1385, does not prevent testimony given on a former trial by one who has since died or is absent from the State from being read on a subsequent trial on the same charge; the section relating to the manner in which the testimony is to be given or taken in the first instance, and not to the use to be made of it after it is once given, and being intended to make the general rule concerning the taking of depositions inapplicable to criminal trials.

CRIMINAL LAW—INSTRUCTIONS—PROVINCE OF JURY.
8. In a criminal case it was proper to refuse to instruct that the jury could and should pass upon the law as well as the facts, for while the verdict necessarily includes both law and fact, and hence it is within the jury's power to determine the law as well as the facts, the jury under the express terms of Section 16, Article I, Constitution of Oregon, and Section 1410, B. & C. Comp., must find the law and the facts under the court's direction as to the law and should receive and accept the law as given by the court.

WITNESSES—CONTRADICTION—EVIDENCE—ADMISSIBILITY.

9. Where a state's witness denied on cross-examination that he had made statements to a particular person, and that person, being called as accused's witness, denied that such statements had been made, and that he stated to S. that they had been made, accused could not show by S. that the second witness had made the last-mentioned statement to her.

CRIMINAL LAW—APPEAL—HARMLESS ERROR—ADMISSION OF EVIDENCE.

10. Any error in receiving testimony as to accused's age was harmless where he admitted that he had reached an age of discretion.

PERJURY—VALIDITY OF PROCEEDING IN WHICH FALSE SWEARING WAS COMMITTED.

11. While perjury cannot be based on false testimony in proceedings void for want of jurisdiction, reversible error does not prevent the offense, and that defendant had not pleaded to an indictment did not render the trial so far void but that false testimony was perjury.

CRIMINAL LAW—APPEAL—HARMLESS ERROR—ADMISSION OF EVIDENCE.

12. The admission of an entry in a school register as evidence of defendant's age, showing that he was older than he claimed when he committed the offense, was harmless error; it appearing from his testimony that he was at the age of discretion.

CRIMINAL LAW—APPEAL—HARMLESS ERROR—ADMISSION OF EVIDENCE.

13. The erroneous admission of an entry in a school register to prove defendant's age was not prejudicial as contradicting and discrediting him; it not appearing that he knew of the entry, or caused it to be made, or furnished the information therefor.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE BEAN.

On September 12, 1904, an information was filed in the circuit court for Multnomah County, signed "John Manning, District Attorney, by G. C. Moser, Deputy," charging the defendant, Charles W. Walton, with the crime of assault with a dangerous weapon. On the next day he was duly arraigned and took time to plead. On the 16th he demurred to the information, which demurrer was overruled on the 5th of October. On the 21st of October he was put on trial, wthout havng pleaded to the indictment, and was convicted and sentenced to the penitentiary. From this judgment he appealed, and in August, 1907, it was reversed, because no plea to the information had been entered by defendant, and the cause was remanded to the court below for a new trial. 50 Or. 142 (91 Pac. 490: 13 L. R. A. (N. S.) 811). The mandate was entered in the lower court on January 6, 1908, and on the 11th of April defendant moved to

quash the information because: (1) It was not indorsed, signed, presented, or filed by the district attorney, but by G. C. Moser, assuming to act as deputy district attorney, and Moser was not the duly or regularly appointed deputy and had no power or authority under the constitution to indorse, sign, present, or file the information; (2) that the effect of the reversal of the former judgment was to place defendant in the situation he was in before the information was filed, and that he could not be further arraigned and required to plead to or be tried thereunder. This motion was overruled, and defendant pleaded:

"That he has already been tried and convicted of the alleged crime charged in the information in this case by the verdict of a jury impaneled and sworn therein, returned, filed, and entered in this court on the 24th day of October, 1904; that he was thereby put in jeopardy for the alleged offense charged in said information; and that under the Constitution and laws of this State he cannot be legally retried for said alleged offense, and pleads the same in bar of further trial thereunder."

This plea was overruled and decided by the court without the interposition of a jury, and defendant entered a plea of not guilty.

The cause was subsequently tried before a jury, and the court permitted Clara M. Badgley, the official reporter, to read the testimony of Emanuel Johnson and Stephen Hogeboom, witnesses for the State on the former trial; the State having shown that Hogeboom was dead and Johnson beyond the jurisdiction of the court. On cross-examination, Nelson, a witness for the prosecution, was asked, among other things, whether he had not made certain statements, inconsistent with his present testimony, to one Slover, at a certain time and place, and replied that he had not. Slover was afterwards called by defendant and asked whether Nelson had made the statements imputed to him, and denied that he had. Defendant thereupon asked him if he had not so stated to Mrs. C. K. Smith, and he replied that he had not. Defendant

called Mrs. Smith and sought to prove by her that Slover had made such a statement, but the court, upon objection of the State, rejected such testimony. During the examination of defendant, he stated that he was 17 years of age at the time the crime with which he was charged was alleged to have been committed. The State subsequently called Miss Butler, who testified she was a teacher in the Couch school of Portland; that she had in her hand the register of attendance and deportment of the pupils·of such school, which was in the handwriting of Miss McKenzie; that the register was made from certain census forms, which were sent out to be filled in by parents or guardians of the pupils, and, when returned, copied into the register. There was no proof as to who furnished the data for such census returns, or that they were correctly copied. Defendant objected to the admission of the testimony on the ground that it was hearsay and immaterial; but the objection was overruled, and the witness permitted to answer that the school register contained a statement that on the 7th of February, 1900, defendant was 15 years, 3 months of age. At the close of the testimony defendant requested the court to instruct the jury: That the crimes of assault and battery and simple assault are included within that charged in the information, and that defendant could be found guilty of either of such offenses if the evidence warrants; that

"You are the judges of, and have a right to determine, under the Constitution of this State, the law as well as the facts of this case, and it is your constitutional province and duty to do so in arriving at your verdict, and you are to determine whether under the law and the facts in evidence the defendant should be convicted or acquitted of the charges laid in the information."

The court gave the first of these instructions, in substance, but refused the second.

The defendant was convicted, and, in answer to the question whether he had anything to say as to why the sentence of the court should not be pronounced upon him,

replied that he objected for the reason that the information, under which he had been tried and convicted, was invalid because not signed by the district attorney, and that the plea in bar was tried by the court without intervention of the jury. These objections were overruled, and defendant sentenced to the penitentiary, from which judgment he appeals.          Affirmed.

For appellant there was a brief with oral arguments by *Mr. Henry St. Rayner* and *Mr. Dan R. Murphy.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney-General, *Mr. George J. Cameron,* District Attorney, and *Mr. Thad W. Vreeland,* Deputy District Attorney, with oral arguments by *Mr. Cameron* and *Mr. Vreeland.*

Mr. Justice Bean delivered the opinion of the court.

1. The motion to set aside the information was properly overruled. It was not made until after a demurrer had been interposed and overruled, and therefore came too late. *State* v. *Smith,* 33 Or. 483 (55 Pac. 534) ; *State* v. *McElvain,* 35 Or. 365 (58 Pac. 525). And, moreover, it was without merit.

2. The office of prosecuting attorney is provided for, and its duties defined, in part, by Section 17, Article VII, of the Constitution of Oregon. The office therefore cannot be abolished or the constitutional duties thereof abridged by the legislature.

3. There is nothing, however, in the constitution which restricts the legislature or lawmaking power from providing that such officer may have deputies to act in his name and stead. *Nesbit* v. *People,* 19 Colo. 441 (36 Pac. 221).

4. The legislature made such a provision by the laws of 1903 (Gen. Laws 1903, Sp. Sess. p. 32), and the act of the deputy in signing and filing the information was the act of his principal, and therefore satisfies the requirements of Section 9, Article I, of the Constitution, which

declares that no warrant. shall issue but upon probable cause supported by oath or affirmation. *State* v. *Guglielmo*, 46 Or. 261 (79 Pac. 577: 80 Pac. 103: 69 L. R. A. 466).

5. Upon the former appeal the judgment was reversed, and a new trial ordered. From the entry of judgment of the record in the court below, the action was pending in that court for trial, notwithstanding the former verdict and judgment. Section 1489, B. & C. Comp. The plea of a former conviction was not in form or substance as required by the statute (Section 1367) and was not sufficient to constitute such a plea at common law. Mr. Bishop says the substantial allegations at common law are:

"That heretofore, at a court which is mentioned, an indictment whose terms are fully recited was found against the defendant under a name stated, which may be that in the present indictment or not according to the fact; that he pleaded thereto, and was convicted or acquitted as the fact was; and the sentence thereon is set out. The plea then avers that the defendant in the former indictment was the same person as in the present one, and the two offenses are the same." 1 Bishop, N. Crim. Proc. § 810.

The plea in this case contains none of the averments which Mr. Bishop says are essential, but only that defendant had been found guilty by the verdict of a jury, without any· allegation that he had been indicted or informed against, or that he pleaded thereto, or that a trial had been had in any court of competent jurisdiction, and a judgment of conviction rendered therein. The plea was therefore bad on its face, either as a plea of former conviction or former jeopardy, and was properly stricken out. *State* v. *Salge*, 2 Nev. 321; *Shubert* v. *State*, 21 Tex. App. 551 (2 S. W. 883); *Wortham* v. *Commonwealth*, 5 Randolph, 569.

6. The Constitution (Section 11, Article I) provides that in all criminal prosecutions the accused shall have

the right "to meet the witnesses face to face," and it is contended that the admission of the testimony of the witnesses Johnson and Hogeboom, given on the former trial of the accused, was an infringement of this right. The Constitution of the United States, and of most states of the Union, contains similar provisions, and the general, if not the universal, holding of the courts is that their essential purpose is to secure to an accused the right of cross-examination, and if he has once enjoyed that right no constitutional privilege is violated by the admission of the testimony of such a witness, who is dead or absent from a state, at a subsequent trial. Underhill, Crim. Ev. § 255; 2 Wigmore, Ev. § 1397; *State* v. *Nelson*, 68 Kan. 566 (75 Pac. 505); *People* v. *Dowdigan*, 67 Mich. 95 (38 N. W. 920); *State* v. *Byers*, 16 Mont. 565 (41 Pac. 708); *Territory* v. *Evans*, 2 Idaho (Hasb.) 651 (23 Pac. 232: 7 L. R. A. 646); *Marler* v. *State*, 67 Ala. 55 (42 Am. Dec. 95); *State* v. *McO'Blenis*, 24 Mo. 402 (69 Am. Dec. 435); *State* v. *King*, 24 Utah, 482 (68 Pac. 418: 91 Am. St. Rep. 808: note, 61 Am. St. Rep. 886). The question was thoroughly examined by the Supreme Court of the United States in *Mattox* v. *United States*, 156 U. S. 237 (15 Sup. Ct. 337: 39 L. Ed. 409), and Mr. Justice Brown, after referring to the rule in England, and saying "we know of none of the states (in this country) in which such testimony is now held to be inadmissible," proceeds: "The question was carefully considered in its constitutional aspect by the Supreme Judicial Court of Massachusetts in *Commonwealth* v. *Richards*, 18 Pick. 434 (29 Am. Dec. 608), in which it was said that: 'That provision was made to exclude any evidence by deposition, which would be given orally in the presence of the accused, but was not intended to affect the question as to what was or was not competent evidence to be given face to face according to the settled rules of common law.' * * The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits,

such as were sometimes admitted in civil cases, being
used against the prisoner in lieu of a personal examina-
tion and cross-examination of the witness in which the
accused has an opportunity, not only of testing the recol-
lection and sifting. the conscience of the witness, but of
compelling him to stand face to face with the jury in
order that they may look at him, and judge by his
demeanor upon the stand and the manner in which he
gives his testimony whether he is worthy of belief.
There is doubtless reason for saying that the accused
should never lose the benefit of any of these safeguards
even by the death of the witness; and that, if notes of
his testimony are permitted to be read, he is deprived of
the advantage of that personal presence of the witness
before the jury which the law has designed for his pro-
tection.   But the general rules of law of this kind, how-
ever beneficent in their operation and valuable to the
accused, must occasionally give way to considerations
of public policy and the necessities of the case.   To say
that a criminal, after having once been convicted by
the testimony of a certain witness, should go scot free
simply because death has closed the mouth of that wit-
ness, would be carrying his constitutional protection to
an unwarrantable extent.   The law in its wisdom declares
that the rights of the public shall not be wholly sacrificed
in order that an incidental benefit may be preserved to
the accused."

7. The testimony of a witness, deceased or out of the
State, or unable to testify, given on a former action, civil
or criminal, between the same parties, relating to the
same matter, is, by statute, made competent on a subse-
quent trial (Sections 718, 1399), unless prohibited by
Section 1402, which declares that in a criminal action
the testimony of a witness must be given orally in the
presence of the court and jury, except in the case of a
witness whose testimony is taken by deposition, by order
of the court in pursuance of the consent of the parties,

as provided in Sections 1379 to 1385, inclusive, relating
to continuances; but we think this section should not be
construed to prevent the testimony of a witness, in a
criminal action, given orally in the presence of the court
and jury, who has since died or is out of the jurisdiction
of the court, from being read on a subsequent trial of
the same defendant on the same criminal charge. It
relates to the manner in which the testimony is to be
given or taken in the first instance, and not to the use
which may be made of it after it is once given. The
statute was intended to make the general rule, concerning
the taking of depositions, inapplicable to criminal trials;
but we cannot think it was designed to abrogate a doctrine
so firmly established and generally applied as that of
permitting the testimony of a witness given in the man-
ner required by statute to be used by either the State
or defense on a subsequent trial, when he has since died
or is absent from the State. A strict construction of the
language of the section would, perhaps, exclude such
testimony; but it would also exclude the dying declara-
tions of the deceased, which are everywhere admitted, on
the ground of necessity. It is for the same reason that
the testimony of a deceased or absent witness is admis-
sible, and the technical language of the statute must give
way to public policy and necessity. It is just as important
for a defendant that the testimony of a witness in his
behalf, given on a former trial, should be competent at
a second trial, where the witness is dead or is without
the reach of process, as it is for the State, and the statute
should, we think, be so interpreted as to protect and pre-
serve the rights of both.

8. There was no error in refusing the instruction
requested, to the effect that the jury had a right, and it
was their duty, to pass upon the law as well as the facts.
The verdict of a jury in a criminal case necessarily
includes both law and fact, and it is therefore within
its power to determine the law as well as the facts; but

it has no legal right to do so. The jury are required to find the law and the facts "under the direction of the court, as to the law" (Section 16, Article I, Constitution of Oregon; Section 410, B. & C. Comp.; *State* v. *Reinhart,* 26 Or. 466: 38 Pac. 822; *State* v. *Reed,* 52 Or. 377: 97 Pac. 627; *Sparf & Hansen* v. *United States,* 156 U. S. 51: 15 Sup. Ct. 273: 39 L. Ed. 343), and should receive and accept the law as given by the court, and not assume to decide it for themselves.

9. The other assignments of error do not require particular notice. The testimony of Mrs. Smith was clearly incompetent, and the testimony in relation to the age of defendant immaterial.

10. Any error that may have been committed in permitting the witness to testify to the age of defendant, as shown by the school register, could not have injured him. According to his own testimony, he had reached an age of discretion at the time the alleged crime was committed, and whether he was 17 or 19 years of age could have had no material bearing on his guilt or innocence.

Judgment affirmed.                        AFFIRMED.

<hr>

Decided April 30, 1909.

## ON PETITION FOR REHEARING.

[101 Pac. 389.]

11. PER CURIAM: The effect of Section 11, Article I, of the Constitution, and Sections 814, 817, 1402, B. & C. Comp., on the general rule that the testimony of a witness, deceased or out of the State, given on a former trial, is competent on a subsequent trial between the same parties, and relating to the same matter, was, we think, sufficiently considered in the former opinion. As was there said, the constitution and the statutory provisions referred to have relation to the manner in which the testimony in a criminal trial is to be given or taken in the first instance, and not the use which may be made of it after it is given. They were not intended to abro-

gate the general rule as to the competency of such testimony. It is stoutly insisted, however, that the testimony of Johnson and Hogeboom was incompetent, even under the rule stated, because the trial in which they testified was a nullity, since defendant had not pleaded to the indictment, and hence there was no issue for trial, and the witnesses would not have been liable for perjury if they had sworn falsely. Perjury cannot be committed in a judicial proceeding absolutely void for want of jurisdiction. *Collins* v. *State,* 78 Ala. 433; *Buell* v. *State,* 45 Ark. 336. But where the court, before whom the oath of a witness is taken, has jurisdiction of the subject-matter and the parties, and the testimony given is material to the inquiry then before the court, false swearing is perjury, though the proceedings may be so irregular or erroneous as to require a reversal on appeal. *Maynard* v. *People,* 135 Ill. 416 (25 N. E. 740) ; *State* v. *Brewer,* 7 Blackf. 45; *Morford* v. *Oklahoma,* 10 Okl. 741 (63 Pac. 958: 54 L. R. A. 513) ; *State* v. *Lavalley,* 9 Mo. 435; *State* v. *Peters,* 107 N. C. 876 (12 S. E. 74) ; *Anderson* v. *State,* 24 Tex. App. 705 (7 S. W. 40). And consequently it is held that the failure of a defendant to enter a plea does not render a subsequent trial so far void that false swearing therein cannot be perjury. *State* v. *Lewis,* 10 Kan. 157. Nor will a failure to swear the jury have that effect. *Smith* v. *State,* 31 Tex. Cr. R. 315 (20 S. W. 707).

There is a quotation from a California case, in the opinion of Mr. Commissioner King in *State* v. *Walton,* 50 Or. 142 (91 Pac. 490: 13 L. R. A. (N. S.) 811), to the effect that perjury cannot be committed on the trial of a defendant in a criminal action, who has not pleaded to the indictment, but this statement was unnecessary to the decision of the case, and is not believed to be sound law. The statutes of this State provides:

"If any person * * of whom an oath or affirmation shall be required by such law, shall willfully swear or affirm falsely in regard to any matter or thing concerning which

such oath or affirmation is authorized or required, such person shall be deemed guilty of perjury." Section 1875.

The court in which the testimony of Johnson and Hogeboom was given had jurisdiction of the case then on trial. They were required by law to take an oath or affirmation to tell the truth (Section 694) ; and, if the evidence given by them was material to the inquiry then before the court, perjury could be assigned thereon, if it was willfully false, notwithstanding the proceedings were so irregular as to require a reversal on appeal. The irregularities or errors on the trial were matters which concerned the defendant in the case, but not the witnesses who testified therein. It would be no defense for them, if charged with perjury, to show that the court committed error in the proceeding, provided it had jurisdiction. It would be most unreasonable to require that all proceedings of a court, in which a witness testified falsely, should be in strict conformity to law before the witness could be proceeded against for perjury. Such a rule would change the parties and issues, and, instead of trying a perjurer for false swearing, the court would be called upon to review the judgment of the court in which the false swearing occurred.

12. It is claimed that the court was in error in holding that the admission of the testimony of Miss Butler, concerning an entry in the school register of the age of defendant, was harmless. The bill of exceptions discloses that defendant was a witness in his own behalf, and, among other things, testified that his age was then 21 years, and on the 1st of September, 1904, he was 17 years old. The State, in rebuttal, called Miss Butler, who testified that a register of the names, ages, attendance, and deportment of pupils in the Couch school, for February, 1900, was in the handwriting of Miss McKenzie, a teacher in such school at that time; that the entries in such register of the names and ages of the pupils were copies from census forms sent out, at the

beginning of each school term, to the parents and returned signed by one of them. She was thereupon permitted, over defendant's objection and exception, to read to the jury from such register an entry, to the effect that on February 7, 1900, the defendant was a pupil in such school, and that his age was 15 years, 3 months. That this testimony was incompetent may be conceded, but we are unable to understand how its admission could prejudice the defendant in any way. Its only purpose was to show his age, and that was not a material question on the trial. From his own testimony it appears that he had reached an age of discretion at the time the alleged crime was committed, and whether he was older than he claimed could not have any material bearing on his guilt or innocence.

13. It is said that the testimony of Miss Butler tended to show that defendant's evidence as to his age was false, and thereby to discredit his testimony on other matters, under the rule that a witness false in one part of his testimony is to be discredited in others. But there is nothing in the record to show that he gave any other material testimony, and moreover, the entry in the school register did not tend to contradict him. It was made without his knowledge, and he was in no way responsible for it, or any of the entries therein. There is no pretense that he furnished the information for which they were made, or knew anything about them.

There are some other points made in the petition for rehearing, but we think they were sufficiently covered by the former opinion.

Petition denied.        AFFIRMED: REHEARING DENIED.

### DISSENTING OPINION.

[102 Pac. 173.]

Dissenting opinion by MR. JUSTICE KING.

I find it impossible, after a careful re-examination into the merits of the above action on petition for rehear-

ing, to agree with my associates in the conclusion reached denying the petition. As reluctant as I am to dissent from the views of the majority, yet, owing to the resultant evil effects that must follow the precedents to be established thereby, I feel it my duty to place on record my dissent from the conclusion announced.

Under the holding of this court in *State* v. *Walton*, 50 Or. 142 (91 Pac. 490: 13 L. R. A. (N. S.) 811), the defendant not having entered a plea, no issue was tried, and without an issue I am of the opinion that perjury could not, under any circumstances, be predicated upon false testimony given at such trial, from which it follows that it was error to permit the typewritten copy of the testimony at the former trial to be read in evidence. Section 11, Article I of the Oregon Constitution, guarantees to the accused the right to meet the witness face to face. However, in a case where the court acquires jurisdiction of the cause, and an issue is tried, even though it be for some cause declared a mistrial, for the reasons stated in the main opinion, I think such course is permissible. But, where no issue was before the court, the evidence must necessarily be immaterial, of no binding effect, and the reading of which, in any subsequent proceedings, should not be permitted, except under such circumstances as the admission of any statement not given under oath might be deemed proper. It was held in *State* v. *Lewis*, 10 Kan. 157, relied upon, that perjury could be predicated upon false testimony given under such circumstances. This was upon the theory that, if the defendant had been acquitted at a trial without an issue, a plea of former jeopardy could have been pleaded. In the case under consideration we have held, and, I think, wisely, that the plea of former jeopardy was not well taken, and it would have been incumbent upon us to so hold in the event the defendant had been acquitted and again tried after the entry of a plea. The error in the case of *State* v. *Lewis*, 10 Kan. 157, evidently

occurred by erroneously assuming that a plea of former jeopardy, under such circumstances, could have been successfully pleaded. It might also be well to note that Mr. Justice BREWER, who wrote the opinion in *State* v. *Lewis,* 10 Kan. 157, also wrote an opinion which was subsequently overruled (as indicated in *State* v. *Walton,* 50 Or. 142, 151: 91 Pac. 490: 13 L. R. A. (N. S.) 811), holding that the failure to enter a plea of guilty, or not guilty, was a matter of form, and not of substance (*State* v. *Cassady,* 12 Kan. 550), and that his views were not only disapproved by a subsequent decision of that court, but by the Supreme Court of the United States as well (*Crain* v. *U. S.,* 162 U. S. 625: 16 Sup. Ct. 952: 40 L. Ed. 1097), in which the same eminent jurist, then a member of that court, dissented. His preconceived, but subsequently disapproved, views along these lines doubtless had much to do with the conclusion reached in *State* v. *Lewis,* 10 Kan. 157, on this question, the fallacy of which consisted in assuming a premise which had no foundation in law. While I believe that under some circumstances the reading of testimony taken in one trial should be permitted in a retrial of the same cause, I think in the case at bar, where there was no issue, it cannot be said that there was, in law, a trial of any kind, for which reason the testimony complained of was inadmissible. A trial, under such circumstances, is a mere nullity, and any evidence adduced thereat hearsay only. No one will question—in fact it is elementary— that a witness cannot be convicted of perjury for any statements made at a trial, though under oath, where the testimony relates solely to immaterial matters. Now, if there were no issue to try, how can it be said that any statements at the pretended trial were material? If so, material to what? Material to a supposed or imaginary issue? I do not question the statement in the majority opinion that "it would be most unreasonable to require that all proceedings of a court in which a wit-

ness testified falsely should be in strict conformity to
law before the witness could be proceeded against for
perjury." This is not a case where testimony was given
in a mistrial, and the trial reversed for a mere irregu-
larity, but one where the pretended trial was a nullity.
Had it come under that class where a reversible error
occurred on account of some irregularity only, the con-
clusion reached *per curiam* would be tenable, but that
such is not the situation here is conceded, and, when
conceded, makes a reversal, on account of the admission
of the testimony in the manner complained of, inevitable.

Another important feature disposed of by this court,
to which I cannot agree, is in holding that the testimony
of Mrs. Butler, although hearsay and inadmissible, con-
stituted a harmless error. The effect of this testimony
was to show that the defendant had testified falsely, and
whether the feature concerning which the false testi-
mony may have been given was material or immaterial
can make no difference so far as the effect upon the
jury is concerned. It is true that some jurors may have
taken into consideration the fact that it is immaterial,
and did not go to the merits of the controversy, but how
are we to determine this fact? Again, it appears that
the usual statutory instruction was given to the effect
that a witness, false in one part of his testimony, is to
be distrusted in others, and it is not to be presumed that
this witness testified upon this point only. In fact, the
record discloses that he gave other testimony. Further-
more, no rule is better settled in this State than that,
where an error in the trial of a cause is once shown,
prejudicial error will be presumed, making it incumbent
upon the party relying upon its harmless character to
place in the bill of exceptions the data essential to a
demonstration of its harmless effect. *Carter* v. *Wake-
man,* 45 Or. 427, 430 (78 Pac. 362) ; *State* v. *Reed,* 52
Or. 377 (97 Pac. 627). Then, under this instruction
of the court, counsel for the State were permitted to

argue to the jury that the defendant, having made a false statement in one instance, should be distrusted as to all other testimony given by him.  To say that this would be harmless error, and not have an effect upon the jury prejudicial to the defendant, is to ignore the common experience of every practitioner at the bar.

It may be that the defendant is guilty, and, if so, his sentence of three years at hard labor, in addition to the same period previously served, is not too severe; but with that we have nothing to do.  As stated by Mr. Justice HARLAN, in *Crain* v. *U. S.,* 162 U. S. 625 (16 Sup. Ct. 952: 40 L. Ed. 1097) : "The present defendant may be guilty, and may deserve the full punishment imposed upon him by the sentence of the trial court. But it were better that he should escape altogether than that the court should sustain a judgment of conviction of an infamous crime where the record does not clearly show that there was a valid trial."  The experience of centuries has made it incumbent upon the highest civilized countries of the world to recognize, as the basis of every prosecution, that every man is presumed to be innocent until proved guilty, and that he must be so proved in a trial regularly had in the manner provided by law.  It is here conceded that this was not done; that the testimony was inadmissible—and I think, beyond question, prejudicial to defendant, from which it must follow that he was precluded from having a fair and impartial trial under the law.

I am therefore of the opinion that the judgment of the lower court should be reversed, and a new trial ordered.