<hr />

Argued March 1, affirmed April 25, 1922.

## STATE *v*. PRESTON.

(206 Pac. 304.)

**Licenses—Automobile License Law Designed for Revenue and to Regulate Operation of Motor Vehicles.**

1.   Automobile license law was designed not only to regulate the operation of motor vehicles on public roads and streets but also for raising revenue.

**Licenses—City Owning Automobiles not Exempt from State License Regulation.**

2.   Laws of 1919, page 153, Section 1, subdivision 2 (Section 4235, Or. L.) in so far as it related to exemption from taxation of automobiles belonging to a city of the state for use in governmental purposes, does not affect the duty of the city to comply with the provisions of Laws of 1919, page 704, regulating the operation of motor vehicles.

**Licenses—City-owned Vehicles not Expressly Exempt from State License Law are Subject to It.**

3.   Laws of 1919, page 724, Section 43, regulating operation of motor vehicles on public roads, having expressly exempted from registration and licensing federal-owned motor vehicles and traction engines, fire-engines, etc., those not within the exception were without it, and city-owned vehicles other than expressly mentioned were subject to the statute.·

**Evidence—Common Knowledge That Fire-engine is Distinguishable from Other Motor Vehicles.**

4.   It is a matter of common knowledge that fire-engines are of a separate class and readily distinguishable from other motor vehicles, while automobiles, when being used by officers or employees of a city, are not.

**Taxation—Legislature may Impose Tax on Property Owned by Municipality.**

5.   The legislature may impose taxes on the property of a municipality provided it is not done to conflict with Article IX, Section 1, Constitution, and Article I, Section 32.

**Statutes—Statute may Combine Police Regulation and Exercise of Taxing Power.**

6. No objection can be made to the validity of a statute on the sole ground that it combines a police regulation and an exercise of the taxing power, provided such law operates uniformly.

**Licenses—Driver of City's Automobile is Subject to Penalty for not Having License Plates Within State License Act.**

7. Laws of 1919, page 704, providing a penalty for driving a motor vehicle upon the public streets of a city without license plates displayed thereon, applies to a chauffeur for a city driving a city-owned automobile upon city streets without such number plates so displayed.

**Statutes—Where Statute Conflicts, One Containing Special Provision Controls Over General.**

8. Where there is a conflict between statutes, both of which would otherwise have equal force and effect, and the provisions of one are special and those of the other general, the special provisions prevail over the general.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

AFFIRMED.

For appellant there was a brief and oral arguments by *Mr. Frank S. Grant,* City Attorney, and *Mrs. Willametta McElroy,* Deputy City Attorney.

For respondent there was a brief over the name of *Mr. Stanley Myers,* District Attorney, with oral arguments by *Mr. Samuel H. Pierce,* Deputy District Attorney, and *Mr. George C. Graham,* Deputy District Attorney.

RAND, J.—The defendant was charged, tried and convicted of the crime of driving and operating a motor vehicle, without proper license plates. At the time of his arrest he was an employee of the City of Portland, and was driving, on the public streets of that city, a Ford car, which belonged to the City of Portland, and which was being used by the city to

convey persons inflicted with contagious diseases to a hospital, maintained by the city. The appellant contends that the exaction of the fees for licensing of motor vehicles, prescribed by Chapter 399, Laws of 1919, is a tax and not a license, and that all property, owned by municipalities in the state, which is used for a public purpose, is exempt from taxation, and therefore this conviction cannot be sustained, as defendant was convicted for driving a car which was not within the operation of the act.

1. From a consideration of Chapter 399, Laws of 1919, it is clear that this law was primarily designed, not only to regulate the operation of motor vehicles upon the public roads, streets and highways of the state, but also for the purpose of raising revenue for government purposes. That fact appears both from the title of the act and from the body of the law, where it provides that the fees imposed shall be in lieu of all other taxes and licenses except municipal license fees, and by the disposal which the statute directs shall be made of the fees so exacted.

2. Chapter 104, subdivision 2, Laws of 1919, codified as Section 4235, Or. L., reads as follows:

"All public or corporate property of the several counties, cities, villages, towns, school districts, irrigation districts and drainage districts in this state used or intended for corporate purposes, except lands belonging to such public corporations held under a contract for the purchase thereof"

shall be exempt from taxation. Subdivision 2, Chapter 104, Laws of 1919, so far as it relates to an automobile belonging to a city in this state, and used for governmental purposes, did not in any way affect the duty of the city to comply with the provisions of Chapter 399, Laws of 1919, at the time of the defend-

ant's arrest and conviction. That this was the intention of the legislature in enacting Chapter 399, Laws of 1919, plainly appears from the provisions of the act.

3. Section 43 of that chapter provides that:

"The purpose, object and intent of this act is to provide a comprehensive system for the regulation of all motor and other vehicles in this state, except that nothing herein contained shall be deemed to apply to the registration and licensing of United States government owned motor vehicles and to traction engines, farm tractors, road-rollers, fire-wagons, fire-engines, invalid chairs and baby-buggies."

By this section the legislature expressly excluded from the operation of the act certain enumerated motor vehicles, of which a Ford car was not one. The automobile which the defendant was driving at the time of his arrest was not within the saving clause of the act. The maxim, *expressio unius est exclusio alterius,*—the expression of one thing is the exclusion of another—applies. If the legislature had intended that vehicles belonging to municipalities, other than fire-wagons and fire-engines, should not be affected by the statute, such vehicles would have been included within the exception clause of the statute. As this was not done, it is proof, not only of the fact that the legislature was of the opinion that fire-wagons and fire-engines would have been controlled by the statute if the exception had not been made, but also of the fact that the legislature intended that no other kind or class of motor vehicles belonging to a municipality, except the two kinds enumerated, should come within the exception of the statute.

4. When the legislature declared what motor vehicles should not be affected by the act, those not within the exception were without it: *Commonwealth*

v. *Summerville,* 204 Pa. St. 300, 304 (54 Atl. 27);
*Brown* v. *Maryland,* 12 Wheat. 419, 438 (6 L. Ed.
678, see, also, Rose's U. S. Notes); 2 Lewis' Suth.
Stat. Const., § 351. Fire-wagons and fire-engines are
owned and used exclusively by cities and towns,
while other motor vehicles are owned and used by
private persons and by municipalities alike. This
was within the knowledge of the legislature at the
time Chapter 399, Laws of 1919, was enacted. It is
a matter of common knowledge that fire-wagons and
fire-engines are of a class separate and distinct, and
readily distinguishable from all other motor vehicles,
while automobiles, when being used by officers and
employees of the city are not so distinguishable. No
reason, therefore, could exist to require a fire-wagon
or a fire-engine to have displayed thereon a license
plate, but it was necessary that automobiles, whether
privately owned or not, should be required to have
license plates so displayed thereon, in order that the
law could be conveniently and successfully enforced.

If there is no constitutional provision which pro-
hibits the legislature from imposing the burden of
taxation upon public property belonging to a city,
town, or other municipality, and which is being used
at the time for governmental purposes, "All such
property is taxable if the state shall see fit to tax it":
1 Cooley on Tax. (3 ed.), 263. But while it is com-
petent for the legislature to tax public property, as
said by Judge COOLEY,

"To levy a tax upon it would render necessary new
taxes to meet the demand of this tax, and thus the
public would be taxing itself in order to raise money
to pay over to itself, and no one would be benefited
but the officers employed, whose compensation would
go to increase the useless levy. It cannot be supposed
that the legislature would ever purposely lay such a

burden upon public property and it is therefore a reasonable conclusion, that however general may be the enumeration of property for taxation, the property held by the state and by all its municipalities for governmental purposes was intended to be excluded, and the law will be administered as excluding it in fact.''

5. Although it is not supposable that the legislature would impose upon municipally owned property the payment of a tax, yet it is within the power and discretion of the legislature to impose upon such property the payment of a tax, as there is no constitutional provision in this state which prohibits the legislature from doing so, provided that it is done in a manner not in conflict with the provisions of Article IX, Section 1, and Article I, Section 32, of the state Constitution.

6. Nor can any objection be made to the validity of a statute upon the sole ground that it combines a police regulation and an exercise of the taxing power, provided that such law operates uniformly throughout the state.

7. The purpose of the motor vehicle law under consideration, as well as that of the present law now in force, was to promote the public safety and to raise the revenue necessary to construct and maintain public highways. The statute under consideration, in Section 10 thereof, provided, among other things, that:

''No person shall operate or drive a motor vehicle upon the roads, streets or highways of this state, unless such vehicle shall have the number plates assigned to it by the Secretary of State conspicuously displayed on the front and rear of such vehicle in plain view and so as to be easily read by the public.''

The defendant was convicted of driving a motor vehicle upon the public streets of the City of Portland without such number plates being displayed upon or attached to such vehicle, and fell within the prohibition of the act, and upon conviction thereof, was rightfully sentenced to pay the fine imposed.

8. Subdivision 2 of Section 4235, Or. L., contained the general provisions that all public or corporate property of certain designated public corporations shall be exempt from taxation, except lands, etc. Under this provision of the statute, if it were not for the special provisions contained in Chapter 399, Laws of 1919, the contentions made by the appellant would control. But under the special, particular and specific provisions relating to this subject, and particularly applying to and controlling this matter, the later provisions contained in Chapter 399 must control. Under the principle of law that where there is a conflict between two statutes, both of which would otherwise have equal force and effect, and the provisions of one are particular, special and specific in their directions, and those of the other are general in their terms, the special provisions must prevail over the general provisions: See *Barnes* v. *Massachusetts Bonding Co.*, 89 Or. 141 (172 Pac. 95), and authorities there cited; *Felt* v. *Felt*, 19 Wis. 193, 208, 212; Lewis' Suth. Stat. Const., § 491.

For the reasons above stated, the judgment appealed from must be affirmed, and it is so ordered.

AFFIRMED.

BURNETT, C. J., and HARRIS and McBRIDE, JJ., concur.