Argued March 18, demurrer sustained; writ quashed
April 14, 1954

# STATE OF OREGON EX REL. GLADDEN v. LONERGAN ET AL.

## 269 P. 2d 491

*Wolf D. von Otterstedt,* Assistant Attorney General, of Salem, argued the cause for plaintiff. With him on the brief was Robert Y. Thornton, Attorney General, of Salem.

*T. Morris Dunne, Jr.,* of Portland, argued the cause for defendants. With him on the brief was Earl F. Bernard, of Portland.

TOOZE, J.

This is an original proceeding in mandamus, instituted by the state of Oregon, ex rel. Clarence T. Gladden, as warden of the Oregon State Penitentiary, as plaintiff, against Frank J. Lonergan and Lowell Mundorff, as judges of the circuit court of the state of Oregon for Multnomah county, as defendants, to compel said defendants to vacate certain orders heretofore made by them. The matter is now before us upon defendants' general demurrer to the alternative writ of mandamus.

From the allegations of the writ it is made to appear that on February 23, 1954, defendant Lowell Mundorff, as judge of the circuit court for Multnomah county, issued an order in a criminal proceeding then pending in said circuit court, entitled the state of Oregon, plaintiff, against Phillip Wallace, Kenneth J. Nelson, and George LeDuke, defendants, being criminal case No. C-31916 in said court, ordering and requiring the plaintiff to produce the person of one Phillip Wallace, a convict in the lawful custody of plaintiff, in the courtroom of defendant Frank J. Lonergan, judge of said court, Multnomah county courthouse, Portland, Oregon, on February 25, 1954, for the purpose of having said Phillip Wallace

testify as a witness at the trial and on behalf of the defendant George LeDuke.

Acting upon the legal advice of the Attorney General of the state of Oregon, which advice was based upon the Attorney General's interpretation of ORS 44.230, the plaintiff advised T. Morris Dunne, Jr., attorney for George LeDuke, that he could not surrender the person of Phillip Wallace for the purposes indicated in the court's order.

On February 25, 1954, plaintiff filed in the circuit court for Multnomah county a motion to vacate the order of Judge Mundorff entered on February 23, but the court refused to vacate it.

On February 25, 1954, the defendant Frank J. Lonergan, as the trial judge in the criminal case then pending against the said LeDuke, issued an order directed to plaintiff and requiring him to appear and show cause why an order should not be issued holding plaintiff in contempt of the circuit court for Multnomah county for his failure to produce the person of Phillip Wallace, a convict in the Oregon State Penitentiary, for the purpose of testifying on behalf of the said LeDuke, as theretofore ordered by the court.

Plaintiff appeared before the defendant Frank J. Lonergan, as judge of the circuit court, in response to the order to show cause and objected to the jurisdiction of the court to try the plaintiff in a contempt proceeding, and to the validity of the original order to produce the witness. He also filed a motion to vacate the order to show cause. His motion was denied.

The sole question for determination in this proceeding is whether the circuit court for Multnomah county had jurisdiction to compel the personal attendance of Phillip Wallace, a convict in the Oregon State Peni-

tentiary, as a witness for and upon the trial of the defendant George LeDuke.

Plaintiff bases his refusal to produce the witness in court upon his interpretation of the provisions of ORS 44.230. This statute is a part of the civil code of this state. It provides:

"44.230 Deposition or production of prisoners. (1) If the witness is a prisoner confined in a prison within this state, an order for his examination in the prison upon deposition, or for his temporary removal and production before a court or officer for the purpose of being orally examined, may be made as follows:

"(a) By the court or judge in which the action, suit or proceeding is pending, unless it is a court of a justice of the peace.

"(b) By any judge of a court of record when the action, suit or proceeding is pending in a justice's court, or when the witness' deposition, affidavit or oral examination is required before a judge or other person out of court.

"(2) The order shall only be made upon the affidavit of the party desiring it, or someone on his behalf, showing the nature of the action, suit or proceeding, the testimony expected from the witness and its materiality.

"(3) *If the witness is imprisoned in the county where the action, suit or proceeding is pending, and for a cause other than a sentence for a felony, his production may be required; in all other cases, his examination shall be taken by deposition.*" (Italics ours.)

By ORS 139.110 the foregoing statute is made to apply in criminal actions, examinations, and proceedings.

It is the plaintiff's contention that under the provisions of ORS 44.230, supra, the court is without jurisdiction to compel the attendance of an imprisoned

felon as a witness for a defendant in a criminal prosecution, and that the testimony of such a witness, if given at all, must be by deposition.

The origin of ORS 44.230 is to be found in an act adopted January 7, 1854 (effective May 1, 1854) by the territorial legislature. It was part of an act entitled: "An Act to regulate proceedings in actions at law in the Supreme and District Courts." Chapter IV of the Act relates to evidence. It deals with the following subjects: (1) Competency of witnesses; (2) manner of compelling the attendance of witnesses; (3) examination of witnesses; (4) depositions taken in the territory; (5) depositions taken out of the territory; (6) proceedings to perpetuate testimony; and (7) provisions relating to records, documents and other writings. It was a part of the civil code. Sections 15 and 16 of ch IV, title II, Statutes of Oregon, 1854, provided as follows:

"SEC. 15. If the witness be a prisoner confined in a jail or prison within this territory, an order for his examination in prison, upon deposition, or for his temporary removal and production before a court or officer, for the purpose of being orally examined, may be issued.

"SEC. 16. Such order can only be made upon affidavit, showing the nature of the action or proceeding, the testimony expected from the witness, and its materiality."

The constitution of this state was adopted September 18, 1857, and, by Act of Congress, Oregon was admitted to the Union as a state on February 14, 1859. Section 7 of article XVIII provided that "all laws in force in the territory of Oregon when this constitution takes effect, and consistent therewith, shall continue in force until altered or repealed." Therefore,

the foregoing statutes remained the law of this state until 1862, when the state legislature adopted "An Act to provide a code of civil procedure." Oregon Code of Civil Procedure, 1862.

Section 791, ch IX, title II, p 195, of that Act provided what is now ORS 44.230, supra. That law has not been amended in any way since its original adoption.

In January, 1851, the territorial legislature adopted an act providing for the erection of a penitentiary at Portland, "in the county of Washington", "for the confinement and employment of persons sentenced to imprisonment and hard labor in the penitentiary in this territory." Statutes of Oregon, 1854, pp 509, 510.

It is obvious, therefore, that the reference to a witness confined in a prison in the foregoing statute of 1854 meant a witness confined in the territorial penitentiary.

The Code of Criminal Procedure as adopted by the territorial legislature on December 22, 1853 (chs I to XXXVII, incl., pp 184 to 256, incl., Statutes of Oregon, 1854), remained in full force and effect and as the law of this state until May 1, 1865, when an act "to provide a code of criminal procedure, and to define crimes and their punishment", adopted October 19, 1864, by the state legislature, became effective.

Section 2, ch II, of the 1853 Act provided:

"In all criminal prosecutions, the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; *to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his. behalf;* and in prosecutions by indictment or information, to a speedy public trial, by an impartial jury of the county wherein the

offence shall have been committed, except * * *.''
(Italics ours.)

Amendment VI, U. S. Constitution (effective in the territory of Oregon), provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, * * *, and to be informed of the nature and cause of the accusation; *to be confronted with the witnesses against him;* to have compulsory process for obtaining witnesses in his favor, and to have the assistance of council for his defense." (Italics ours.)

It is to be observed that the statute of 1853 goes further than the federal constitutional provision respecting witnesses. The constitution simply gives the accused the right to be confronted with the witnesses *against him,* whereas, the statute gives him the right "to meet *the witnesses* face to face", without any qualification; that is to say, under the statute he is entitled to confront all witnesses, whether for or against him.

■■ It is to be presumed that the territorial legislature knew the history and background of the constitutional amendment, and what common-law right it was intended to preserve unimpaired; that it was a constitutional declaration of the then well-established hearsay rule; that its essential purpose was to secure to an accused person the right of cross-examination of adverse witnesses, a right firmly established at common law. Compulsory process for witnesses in favor of an accused as provided in the constitution vests a right not enjoyed at common law.

■ Although it may be that one of the principal purposes of the legislative Act of 1853 was to provide by statute for the right of an accused person to cross-

examine adverse witnesses, nevertheless, the legislature had the power to and did enlarge that right by making the "face to face" or "confrontation" rule apply to all witnesses. We must attribute to the legislature a definite purpose in adopting language different from that appearing in the federal constitution and, in particular, to its elimination of the very vital and potent words "against him". It is obvious that a legislative act was wholly unnecessary to preserve the constitutional right of an accused to be confronted with the witnesses against him. In that respect, the constitution was self-executing. But it did require a legislative act to extend the constitutional right to encompass all witnesses.

■ There is no question but that the main and essential purpose of confrontation, as provided in the federal constitution and in similar provisions found in state constitutions, is to secure for the accused the opportunity of cross-examination. However, it is recognized that there is a secondary advantage to be gained by the personal appearance of the witness before the court and jury where his testimony is orally given. This advantage is stated by Professor Wigmore as follows: "the *judge* and the *jury* are enabled to obtain the elusive and incommunicable evidence of a *witness' deportment while testifying,* and a certain subjective moral effect is produced upon the witness." 5 Wigmore, Evidence 3d ed 125, § 1395.

In 5 Wigmore, Evidence 3d ed 127, § 1396, the author states:

"The question, then, whether there is a right to be confronted with opposing witnesses is essentially a question whether there is a right to cross-examine. If there has been a Cross-examination, there has been a Confrontation. * * *. Nevertheless, the

secondary advantage, incidentally obtained for the tribunal by the witness' presence before it—the de-meanor-evidence—*is an advantage to be insisted upon whenever it can be had.* No one has doubted that it is highly desirable, *if only it is available.* But it is merely desirable. *Where it cannot be obtained, the requirement ceases.* * * * and just as the original of a document or a preferred witness may be dispensed with in case of unavailability, so demeanor-evidence may be dispensed with, in necessity. * * *." (All italics ours, except last line.)

The secondary advantage gained by the personal appearance of a witness before court and jury is one that applies as well to the state as to an accused. Often, "actions speak louder than words".

It is not unreasonable to suppose that the territorial legislature had this secondary advantage in mind when it adopted the statute of 1853, and intended thereby to secure it to the fullest extent permitted in all criminal prosecutions.

Article 1, § 11, of the Oregon Constitution, as adopted in 1857 (in effect in 1859 and for many years thereafter), provided:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offence shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; *to meet the witnesses face to face,* and to have compulsory process for obtaining witnesses in his favor." (Italics ours.)

■ It will be observed that as to the matter now under discussion, the wording of the Oregon Constitution is the same as that appearing in the territorial legislative

act of 1853. The constitutional right "to meet the witnesses face to face" is not limited to witnesses *against* the accused. The provision is broad enough to include all witnesses, although basically it is but an enlargement of the common-law rule heretofore mentioned; that is, the rule preserving the right of cross-examination. Under this provision it is clear that a right to direct examination of one's own witnesses is guaranteed, as well as the right of cross-examination of adverse witnesses, both rights being subject to the well-established exceptions to the hearsay rule.

Some state constitutions follow substantially the wording of the federal constitution that the accused has the right "to be confronted with the witnesses against him": Alabama, Arkansas, Connecticut, Georgia, Iowa, Louisiana, Maine, Michigan, Minnesota, Mississippi, New Jersey, New Mexico, Rhode Island, South Carolina, Texas, Utah, West Virginia, and Wyoming. Other state constitutions contain a phrase equivalent to that used in the federal constitution; viz., "to meet the witnesses against him face to face": Arizona, California (by statute), Colorado, Florida, Missouri, Montana, Nebraska, Nevada (by statute), New Hampshire, North Dakota (by statute), Oklahoma, South Dakota, and Washington.

In Delaware, Illinois, Indiana, Kansas, Kentucky, Pennsylvania, Tennessee, and Wisconsin the several constitutional provisions are practically, if not exactly, the same as that appearing in the Oregon Constitution. That also is largely true in Ohio, Vermont, and Virginia.

The Maryland constitution (Art XXI, Decl of R) contains this provision: "in all criminal prosecutions every man hath a right * * * to be confronted with the witnesses against him, * * * to examine the

witnesses for and against him on oath." In Massachusetts the constitution (Art 12, Decl of R) provides: "Every subject shall have a right to produce all proofs that may be favorable to him; to meet the witnesses against him face to face." In the North Carolina constitution (Art 1, § 11) we find an entirely different concept; one not present in any other constitution so far as we have been able to discover. It is: "In all criminal prosecutions, every man has the right * * * to confront the accusers and witnesses with other testimony."

■ The foregoing review of the several state constitutional provisions reveals that in most states the guaranty is confined to the "witnesses against" the accused. That is the common-law rule, and it is generally held that the provision goes no further in its protections than does the rule at common law; that its adoption carried with it the well-established exceptions to the hearsay rule as known to the common law. 5 Wigmore, Evidence 3d ed 127, § 1397.

■ We have the firm opinion that importance must be attached, and effect given, to the clear wording of our own constitutional provision. The effect we have given it, to-wit: a guaranty that an accused shall have the right to meet his own witnesses face to face, and to examine them orally in the presence of court and jury, as well as the right to meet face to face and cross-examine the witnesses against him, is in keeping with well-recognized rules of constitutional construction. 11 Am Jur 658 to 709, incl., Constitutional Law, ch 5. The provision vests fundamental rights in the accused; it gives no rights to the state. The rights so guaranteed to the accused may be waived by him, but they cannot be denied him. As to the right to have witnesses in his favor attend before court and jury to testify orally

on his behalf, accused's further right to compulsory process affords the means for its enforcement. But it is evident that the extended right given an accused goes no further than we have indicated. There is nothing to indicate that the framers of our constitution intended thereby to do away with the well-established exceptions to the confrontation rule. The provision simply places *all witnesses* in the same category, insofar as the right to confrontation is concerned.

 To emphasize the point we make, we quote briefly some of the rules of construction stated in 11 Am Jur, supra. The following rules are stated:

"An elementary rule of construction is that if possible, effect should be given to every part and every word of a Constitution and that unless there is some clear reason to the contrary, no portion of the fundamental law should be treated as superfluous." (p 665).

"It is a fundamental canon of construction that a Constitution should receive a liberal interpretation in favor of a citizen, especially with respect to those provisions which were designed to safeguard the liberty and security of the citizen in regard to both person and property." (p 670).

"* * *. The court, therefore, in construing a constitutional enactment, is usually limited to the language of the enactment itself. It may not be governed by what the framers * * * might have meant to say, but is of necessity controlled by what they did say. The rule is sometimes stated more completely that a constitutional provision which is positive and free from all ambiguity must be accepted by the courts as it reads." (p 678).

"* * *. Thus, it has been stated that contemporaneous construction of a constitutional provision by the legislature, continued and followed, is a safe guide as to its proper interpretation. Such contemporaneous construction affords a strong pre-

sumption that it rightly interprets the meaning and intention of the constitutional provision." (p 699).

Also see 11 Am Jur 704, Constitution Law.

To the time Oregon was admitted to the Union as a state, Oregon Territory was governed by the provisions of the federal constitution. This fact is important in considering another rule stated in 11 Am Jur, supra, at page 684:

"Framers of a new Constitution who adopt provisions contained in a former Constitution, to which a certain construction has been given, are presumed as a general rule to have intended that these provisions should have the meaning attributed to them under the earlier instrument. * * * A corollary of the rule is that where a word in an amendment or re-enactment of a Constitution is omitted, the omission should be presumed to have been intentional."

It is significant, therefore, that in the clause of our constitution now under consideration, the important words "against him" as used in the federal constitution (and in the constitutions of many states) were omitted.

On October 19, 1864, the legislative assembly of the state of Oregon adopted an act "To provide a code of criminal procedure, and to define crimes and their punishment." This Act became effective May 1, 1865, and superseded the territorial law of 1853. General Laws of Oregon (Deady), 1845-1864, pp 441 to 578, incl.

Chapter XXII, § 213, p 478, of that Act provides:

"In a criminal action, the testimony of a witness *must* be given orally, *in the presence of the court and jury*, except in the case of a witness whose testimony is taken by deposition, by order of the court, in pursuance of the consent of the parties,

as provided in Chapter XIV of this code." (Italics ours.)

The foregoing provision has never been amended since its original adoption, and is now ORS 136.530.

 It will be noted that the foregoing statute applies to all witnesses. It is not confined to witnesses "against" the accused. Obviously, the mandatory provision refers to the direct examination, as well as to the cross-examination, of witnesses. At the time the statute was adopted the constitutional provision hereinabove discussed was in full force and effect, as was the territorial Act of 1853. It is manifest that the statute had for its object the enforcement of the constitutional right of an accused person "to meet the witnesses face to face". Considering the history of the subject as hereinbefore discussed, it is clear that this statute constituted a legislative construction or definition of the constitutional provision in question and must be construed fairly to the accomplishment of that end. 22 CJS 715, Criminal Law, § 467(3). To all intents and purposes, this statute was adopted contemporaneously with the adoption of the constitution, and must be read into and considered a part of the constitutional guaranty. *State v. Swain,* 147 Or 207, 214, 31 P2d 745, 32 P2d 773, 93 ALR 921.

Only one exception is written into the statute. Expressio unius est exclusio alterius. That exception refers to ch XIV of the same criminal code. Chapter XIV (p 465) provides:

"SEC. 146. When an application is made for the postponement of a trial, the court may, in its discretion and in the furtherance of justice, require as a condition precedent to granting the same, that the party applying therefor consent that the deposition of a witness or witnesses may be taken and read on the trial of the case, and unless such con-

sent be given, may refuse to allow such postponement for any cause.

"SEC. 147. When such consent is given, the court must make an order appointing some proper time and place for taking the deposition of such witness, either by the judge thereof or before some suitable person to be named therein, as commissioner, and upon either written or oral interrogatories.

"SEC. 148. Upon the making of the order provided in the last section, the deposition must be taken and filed in court, and may be read on the trial of the case, in like manner and with like effect, and subject to the same objections as in civil cases."

The above provisions are now contained in ORS 136.080, 136.090, and 136.100. They were never amended except as to code section references.

■ It is firmly established that depositions and former testimony of witnesses, where the opportunity of cross-examination has been afforded, are, under certain circumstances, admissible in evidence, and such admission is not a violation of the constitutional guaranty. In *State v. Walton*, 53 Or 557, 563, 99 P 431, 101 P 389, this matter is discussed. In that case Mr. Justice ROBERT S. BEAN wrote:

"The Constitution (Section 11, Article I) provides that in all criminal prosecutions the accused shall have the right 'to meet the witnesses face to face,' and it is contended that the admission of the testimony of the witnesses Johnson and Hogeboom, given on the former trial of the accused, was an infringement of this right. The Constitution of the United States, and of most states of the Union, contains similar provisions, and the general, if not the universal, holding of the court is that their essential purpose is to secure to an accused the right of cross-examination, and if he has once enjoyed that right no constitutional privilege is vio-

lated by the admission of the testimony of such a witness, *who is dead or absent from a state,* at a subsequent trial.

"* * * * *

"The testimony of a witness, *deceased or out of the State, or unable to testify,* given on a former action, civil or criminal, between the same parties, relating to the same matter, is, by statute, made competent on a subsequent trial (Sections 718, 1399), unless prohibited by Section 1402, which declares that in a criminal action the testimony of a witness must be given orally in the presence of the court and jury, except in the case of a witness whose testimony is taken by deposition, by order of the court in pursuance of the consent of the parties, as provided in Sections 1379 to 1385, inclusive, relating to continuances; but we think this section should not be construed to prevent the testimony of a witness, in a criminal action, *given orally in the presence of the court and jury, who has since died or is out of the jurisdiction of the court,* from being read on a subsequent trial of the same defendant on *the same criminal charge.* It relates to the manner in which the testimony is to be given or taken in the first instance, and not to the use which may be made of it after it is once given. *The statute was intended to make the general rule, concerning the taking of depositions, inapplicable to criminal trials;* but we cannot think it was designed to abrogate a doctrine so firmly established and generally applied as that of permitting the testimony of a witness given in the manner required by statute to be used by either the State or defense on a subsequent trial, *when he has since died or is absent from the State.* A strict construction of the language of the section would, perhaps, exclude such testimony; but it would also exclude the dying declarations of the deceased, which are everywhere admitted, on the ground of necessity. It is for the same reason that the testimony of a deceased or absent witness is admissible, and the technical

language of the statute must give way to public policy and necessity. *It is just as important for a defendant that the testimony of a witness in his behalf,* given on a former trial, should be competent at a second trial, *where the witness is dead or is without the reach of process,* as it is for the State, and the statute should, we think, be so interpreted as to protect and preserve the rights of both.'' (Italics ours.)

Also see *State v. Von Klein,* 71 Or 159, 168, 142 P 549; *State v. Meyers,* 59 Or 537, 541, 117 P 818.

■ As pointed out by Justice Bean, the use of depositions and former testimony is conditioned upon the *necessity* for such use. The rule of admissibility and the conditions thereof are stated by Professor Wigmore in 5 Wigmore, Evidence 3d ed 148, § 1402, as follows:

''The general principle upon which depositions and former testimony should be resorted to is the simple principle of *necessity,*—i.e., the absence of any other means of utilizing the witness' knowledge. * * *. The only inquiry, then, need be: Is his testimony in court unavailable?''

Specific cases of unavailability of a witness, rendering his deposition or former testimony admissible (where there has been the opportunity of cross-examination), are (1) death of the witness; (2) absence from the jurisdiction; (3) disappearance of the witness, and inability, after diligent search, to find him; (4) illness, infirmity, and age, preventing the attendance of the witness; (5) insanity, or other mental incompetency.

As to a witness who is imprisoned for crime, it is stated in 5 Wigmore, Evidence 3d ed 160, § 1407:

''The witness' *imprisonment* for crime, supposing him not to be disqualified for infamy, *is no reason for excusing his non-production;* for his

production can presumably be obtained by order of Court.'' (Last italics ours.)

In § 1415, page 191, Professor Wigmore states this further rule:

"No one has ever doubted that the *former testimony* of a witness cannot be used if the witness is *still available* for the purpose of testifying at the present trial.

"* * * * * *

"So also if the witness is *within reach of the court-process* and is not shown to be unavailable by reason of illness or the like, the deposition is inadmissible.''

The holding in *State v. Walton,* supra, is in keeping with the statutes of this state. Oregon Revised Statutes 41.900 provides in part as follows:

"Evidence may be given of the following facts:

"* * * * * *

"(8) The testimony of a witness, deceased, or out of the state, or unable to testify, given in a former action, suit, or proceeding, or trial thereof, between the same parties, relating to the same matter.''

Oregon Revised Statutes 136.510 makes the above statute, a part of the civil code, applicable to criminal actions and proceedings.

These statutes are also in harmony with the rules announced by Professor Wigmore, supra. Admissibility depends upon *necessity;* that is upon the unavailability of the witness.

In a supplemental memorandum filed in this court subsequent to the oral argument, counsel for plaintiff candidly admits that he was in error in stating that the constitutions in most jurisdictions from which certain statutes were cited by him in his brief have a constitutional provision identical with that of the state

of Oregon. He now states that only the constitutions of Kansas and Delaware have a clause identical with that of the state of Oregon. He then states:

"* * * However, in both of these states the cases seem to indicate that the first clause referred to is tantamount to the confrontation rule in the United States Constitution and in those of other states. See, for instance, Burns v. Amrine, 156 Kan. 83."

We have read the opinion in that Kansas case, but do not find anything therein that gives support to counsel's contention. The court was there dealing with the compulsory process clause of the constitution.

As an historical fact, the Bill of Rights in our constitution was taken almost entirely and verbatim from the constitution of the state of Indiana, adopted in 1851. Carey's History of the Oregon Constitution, p 468. Article 1, § 11, is identical with the wording of Art 1, § 13, of the Indiana Constitution. 1 Burns Ind Stat Ann 10. Upon the questions of the use of former testimony and depositions upon the trial of an accused, and the right of the accused to waive the constitutional provision in his favor, the Indiana Supreme Court has announced the same rules as have been enunciated by this court. *Batchelor v. State,* 189 Ind 69, 125 NE 773; *Levi v. State,* 182 Ind 188, 104 NE 765, 105 NE 898, Ann Cas 1917A, 654; *Wilson v. State,* 175 Ind 458, 93 NE 609. Upon diligent search, we were unable to find a decision by that court which dealt with the specific question now under consideration by us.

Indiana has a statute somewhat similar, in effect, to ORS 136.530. Section 9-1601, 4 Burns Ind Stat Ann, provides:

"Witnesses on behalf of the state or of the de-

fendant, in a criminal prosecution, may be compelled to attend and testify in open court * * *."

Sections 9-1623 to 9-1625, incl., provide for the personal attendance of convicted felons as witnesses. It is accomplished by issuance of a subpoena directed to the warden of the penitentiary, based upon an order of the court.

We have made a search for decisions in Delaware, Illinois, Kentucky, Pennsylvania, Tennessee, and Wisconsin, which considered the matter we are now discussing. We have been able to find but one decision on the subject: *Petty v. State,* 72 Tenn 326.

In that case defendant had moved for a continuance and presented his affidavit of the absence of a material witness, with a recitation of the facts he expected to prove. The court ruled the affidavit to be sufficient, whereupon the attorney general proposed to agree that the affidavit might be read as the deposition of the witness, who was a nonresident of the state. The accused refused to agree to this, but insisted upon a continuance. The court denied the motion to continue, giving defendant permission to amend his affidavit by the addition of any other material fact he expected to prove by the witness and by stating that the affidavit would be read as the deposition of a credible witness. The entire opinion of the court upon the issue presented is as follows:

"The constitutional provision that 'in all criminal prosecutions, the accused hath the right to meet the witnesses face to face,' has reference to witnesses in support of the prosecution, and not to witnesses on behalf of the defense. This has long been settled in this State by the statutory enactment allowing persons charged with crime to take the depositions of witnesses. That statute has been

repeatedly acted upon, and held by this Court to be constitutional.

"In the present case, the witness was a non-resident of the State, and not subject to its compulsory process.

"When the prisoner is permitted to have the benefit of the testimony of a real or mythical witness, in language of his own, suggested and employed by himself, and deliberately penned by his attorney, without subjection to the test of a cross-examination, we think its admission as the testimony of a credible witness is no error of which he can complain."

The unequivocal statement made by the Tennessee court is, of course, in direct conflict with the conclusions we have reached in this case. However, the total absence of any discussion upon which the conclusion was based deprives it of value as a precedent. Furthermore, as stated by that court, "the witness was a non-resident of the State, and not subject to its compulsory process." This not only weakens the conclusion, but also creates a doubt as to what the court might have said had the witness been available and subject to compulsory process. Moreover, we find no statute in Tennessee which even remotely resembles ch XXII, § 213, General Laws of Oregon (Deady), 1845-1864 (ORS 136.530), supra; a statute that itself constitutes a legislative definition and interpretation of the constitutional provision.

The same conclusion, with no argument to support it, as that announced in *Petty v. State,* supra (*Petty v. State* being cited as the only authority in support thereof), is again stated in a decision by the Tennessee court, wherein was involved the disbarment of an attorney (held by the court not to be a criminal proceeding): *State v. Bomer,* 179 Tenn 67, 162 SW2d 515.

It is obvious that the statement in this latter case was dictum; no criminal proceeding was involved.

Counsel invites our attention to the case of *State v. Belding,* 43 Or 95, 99, 71 P 330, from which he quotes the following:

"* * * The guaranty of the organic law of the state that the accused in a criminal prosecution shall have the right to meet the witnesses face to face (Const. Or. Art. 1, § 11) is satisfied when at some stage of the trial the defendant is confronted with the witnesses, and given an opportunity to cross-examine them: [Citing cases]."

That statement must be considered in the light of the situation then before the court. We were discussing the testimony of witnesses *against* the defendant. There is not now, nor has there ever been, any question in this state but that our constitutional provision as it may relate to witnesses against an accused is tantamount to the confrontation rule under the federal constitution; but that does not mean that the same constitutional clause does not include witnesses for the accused, nor have we ever so held.

A statement similar to that quoted from *State v. Belding,* supra, is to be found in an earlier Oregon case: *State v. Bowker,* 26 Or 309, 313, 38 P 124.

In the Bowker case the question arose concerning the deposition of a witness against the accused. The deposition had been taken as a condition for the allowance of defendant's motion for a continuance. Defendant consented to the taking of the deposition. The deposition was taken in the presence of defendant and his counsel, and on the trial it was offered in evidence by the state, the witness having died in the meantime. We held that the right to confrontation on the trial might be waived by an accused.

Under Art 1, § 11, Oregon Const., the accused not only is guaranteed the right "to meet the witnesses face to face", but also the right of having "compulsory process for obtaining witnesses in his favor".

At common law an accused charged with a felony could not demand as a matter of right compulsory process for his witnesses, but it was the duty of the prosecution to call and examine all persons who had knowledge of material facts connected with the crime, whether favorable or unfavorable to the defendant. But under the federal constitution and the constitutions of most states, the right of compulsory process for witnesses on behalf of defendant is secured. The right is not subject to the discretion of the court; it is usually absolute, at least as to process for necessary and material witnesses, even though the persons needed as witnesses live outside the county of the venue. 14 Am Jur 881, Criminal Law, § 163.

It is well established that the constitutional guaranty does not require process at the expense of the state, but in Oregon provision therefor is made by statute. Oregon Revised Statutes 139.050 provides:

> "Upon application of the defendant, the clerk of a court in which a criminal action is pending for trial shall, at the expense of the state, issue in blank, under the seal of the court, subpenas subscribed by him as clerk for not to exceed five witnesses within the state; provided, however, that any defendant may have subpenas issued for any number of witnesses at his own expense without an order of the court."

Oregon Revised Statutes 139.060 makes provision for obtaining subpoenas by either the state or the defendant for more than five witnesses upon a showing before the court.

■ The right to compulsory process for necessary and material witnesses on his behalf is a valuable right guaranteed to an accused. It is a right that cannot be denied by legislative act or failure to act. In the interests of justice, it is the duty of courts to enforce the right. When all is said and done, in every criminal proceeding, as well as in the trial of all other cases, the primary aim of the law is to arrive at the truth of the matter in controversy, and no obstacle should be sanctioned that would deny the presence of a competent witness who has knowledge of material facts.

In this state there are statutes which specifically provide how the attendance of witnesses within the state may be compelled; the courts are given statutory authority for compelling such attendance. The order of the court involved in this litigation was based upon the statute. It is unnecessary to review those statutes.

■ However, it is quite well settled (although there are cases to the contrary) that the constitutional right of an accused to have compulsory process to secure the presence of witnesses on his behalf is not infringed where a trial court, acting under or in the absence of a statute, denies defendant's motion for a continuance because of the witnesses' absence, where the prosecution admits that the witnesses, if present, would testify to certain facts. 14 Am Jur 881, Criminal Law, § 163; *Hoyt v. People,* 140 Ill 588, 30 NE 315. As noted, our statute provides for such procedure. ORS 136.530, 136.080, 136.090, and 136.100, supra.

■ Phillip Wallace, though a convicted felon and confined in the penitentiary, is a competent witness. The materiality of his testimony and the necessity of his personal attendance upon the trial as a witness on behalf of the defendant were made to appear satis-

factorily to the trial judge. The order of the trial judge to compel his attendance was issued accordingly. The witness was within the state and was available. His oral testimony upon the trial is demanded by the provisions of ORS 136.530, supra.

Counsel for plaintiff in his brief states ''that at common law, and in Oregon until 1862, persons convicted of crime were not competent to testify as witnesses. This impediment was removed by statutory enactment in 1862 in a section now compiled as ORS 44.020.'' That is not a correct statement of the genesis of that law. On December 22, 1853, the territorial legislature adopted an act providing for the Revised Statutes for the territory of Oregon (effective May 1, 1854). Title I, § 5, ch IV, p 111, provided:

> ''No person offered as a witness shall be excluded from giving evidence, by reason of conviction for crime, but such conviction may be shown to affect his credibility.''

■ As to competency to testify, a convicted felon stands upon the same footing as any other competent witness. Of course, his conviction may be considered by a jury as it might affect his credibility, but it does not affect the competency of his testimony.

There is no constitutional obstacle to the adoption of a statute rendering convicted felons incompetent as witnesses, and some states have enacted such a law. Under such a statute, such convicted felon would be barred from giving testimony in any case, civil or criminal, either orally or by way of deposition. However, it is well established that former testimony of such a person given before the statutory disqualification attached to him, would be admissible upon a subsequent trial between the same parties upon the same cause of action. 5 Wigmore, Evidence 3d ed 165, § 1410.

As heretofore pointed out, plaintiff's contention in this case is based upon his interpretation of the provisions of subd. (3) of ORS 44.230, supra, and, in particular, of the concluding phrase; to-wit: "in all other cases, his examination shall be taken by deposition". It is his position that this phrase has application to the entire statute. In this, we agree.

In construing ORS 44.230, we must keep in mind that until May 1, 1865, it applied solely to civil actions, suits, and proceedings. The use of depositions in civil cases was well established. No constitutional provision stood in the way of such use. No question was or could be raised as to the power of the legislature to regulate when, how, and under what conditions depositions in civil proceedings might be taken and used. Under the statute in question it was largely a discretionary matter with the court whether a person confined in prison (not under sentence for a felony) should be required to attend in person and orally testify, or whether his testimony should be given by deposition. The order provided for took the place of the ancient writ of "habeas corpus ad testificandum". However, under the mandatory provision contained in the last phrase of the statute, if such a witness is confined under "a sentence for a felony", his testimony must be taken by deposition, in lieu of his personal attendance upon the court. The court has no discretion in such circumstances.

As heretofore noted, the statute making ORS 44.230 applicable to criminal proceedings was adopted in 1864, although it was not effective until May 1, 1865. ORS 139.110. At the same legislative session and as a part of the same criminal code then adopted, ORS 136.530, relating to the requirement that "in a criminal action, the testimony of a witness must be given orally, in

the presence of the court and jury", was also adopted. We have already discussed the effect of that statute.

■ It is manifest that there is a direct conflict between the provisions of ORS 44.230 and ORS 136.530; a conflict that cannot reasonably be reconciled.

Oregon Revised Statutes 136.530 is, as we have seen, the legislative definition and construction of the constitutional provision relating to the right of the accused "to meet the witnesses face to face". It is fortified by the additional constitutional right of an accused to have compulsory process for witnesses on his behalf. It is a special statute, dealing with a particular subject, and is complete in itself; whereas, ORS 44.230 is a general statute applying to all proceedings in court. Under well-recognized rules of statutory construction, the provisions of ORS 136.530 control. *State v. Preston,* 103 Or 631, 637, 206 P 304, 306, 23 ALR 414; 82 CJS 834, Statutes, § 367b.

In *Graham v. State,* 50 Ark 161, 164, 6 SW 721, the Arkansas court, in discussing the compulsory process clause of the constitution, said:

> "It is not necessary to recount the evils entailed by the ancient criminal prosecution when the accused was allowed to swear no witness to his defense, or to give the history of the struggle which led to the guaranty to the accused of the right to have his witnesses deliver their testimony orally at the time and place of trial, in order to understand the meaning of this provision. *'Compulsory process for obtaining witnesses' means the right to invoke the aid of the law to compel the personal attendance of witnesses at the trial, when they are within the jurisdiction of the court.* It is a substantive right, a real right, and not an illusory sham to be satisfied by the issue of process, which is to be rendered ineffectual by hastening on to immediate trial." (Italics ours.)

As applied to criminal proceedings, the provisions of ORS 44.230 are in denial of the constitutional rights of an accused to "meet the witnesses face to face", and "to have compulsory process for obtaining witnesses in his favor". It follows, therefore, that, as applied to criminal prosecutions, ORS 44.230 is unconstitutional and void. *Graham v. State,* supra.

The conclusion we reach is of benefit to the state as well as to the defendant. If we adopted the construction of the statute as insisted upon by plaintiff, then the state itself would be prevented from producing a convicted felon in court to testify against an accused. This would mean that in some cases vital testimony upon which the conviction of a guilty defendant might depend would not be available, because, unless the accused expressly consented thereto, such testimony could not be taken by deposition. The statute itself makes no distinction between proposed witnesses for the state and those for the defendant. Upon oral argument, even plaintiff's counsel admitted that the statute should not be held to apply to state witnesses, yet there is nothing in the statute itself which exempts them.

█ We hold that the circuit court for Multnomah county had jurisdiction to order the plaintiff to produce Phillip Wallace, a prisoner in his custody, in said court to give oral testimony on behalf of the defendant George LeDuke at the trial of said accused, and that it was the duty of plaintiff to obey that order.

The demurrer to the alternative writ of mandamus is sustained, and the writ is quashed.

BRAND, J., concurs in the result.

LUSK, J., specially concurring.

I concur, but solely on the ground that ORS 44.230,

as attempted to be applied in this case, is an unconstitutional infringement upon the right of an accused in a criminal prosecution to compulsory process. It is my opinion that the provision of Art I, § 11, of the Constitution, giving the accused "the right to meet the witnesses face to face" has no bearing on the question presented for decision here. Concerning this provision it was said by Mr. Justice ROBERT S. BEAN, speaking for the court in *State v. Walton*, 53 Or 557, 563, 99 P 431, 101 P 389:

> "* * * The Constitution of the United States, and of most states of the Union, contains similar provisions, and the general, if not the universal, holding of the courts is that their essential purpose is to secure to an accused the right of cross-examination, and if he has once enjoyed that right no constitutional privilege is violated by the admission of the testimony of such a witness, who is dead or absent from a state, at a subsequent trial."

To the same effect see *State v. Von Klein*, 71 Or 159, 168, 142 P 549; *State v. Meyers*, 59 Or 537, 541, 117 P 818; *State v. Belding*, 43 Or 95, 99, 71 P 330.

The comparable language of the Sixth Amendment of the Constitution of the United States is "to be confronted with the witnesses against him". Most of the state constitutions also speak of the witnesses "against" the accused. See 5 Wigmore on Evidence (3d ed) 127 et seq. This court, as the cases I have cited show, has held that all these provisions have the common essential purpose of securing to an accused the right of cross-examination. Of course, no one would suggest that the makers of the Constitution intended to secure to an accused the right to cross-examine his own witnesses. The majority, therefore, calls attention to another and secondary purpose of the constitutional

guaranty, namely, the right of the accused to have the jury see the witness and judge his credibility by his demeanor upon the stand and his manner of testifying. This is an advantage "merely desirable" and which may be "dispensed with". 5 Wigmore on Evidence (3d ed) 127, § 1396; it "must occasionally give way to considerations of public policy and the necessities of the case." *State v. Walton,* supra, p. 564. It is to be observed that the authorities just cited are speaking of the advantage to the accused of having the jury see the witnesses for the prosecution—not his own witnesses. The accused has no need of any other constitutional guaranty of the right to have his own witnesses seen and heard by the jury than the guaranty, also found in Art I, § 11, of the right "to have compulsory process for obtaining witnesses in his favor". This means the right to invoke the aid of the law to compel personal attendance at the trial of witnesses within the jurisdiction of the court. *Graham v. State,* 50 Ark 161, 6 SW 721; *Williams v. State,* 23 Ala App 297, 124 So 402; *Freeland v. State,* 34 Ala App 313, 40 So2d 339.

The question, therefore, is whether the legislature has the power to limit this constitutional right to compulsory process by legislation such as that found in ORS 44.230. Since a convicted felon is a competent witness in this state, the conflict between the statute and the Constitution seems to be clear. The attorney general argues, however, that, notwithstanding the conflict, the statute may be supported as a measure in the interest of the public safety. The brief says: "Every time a prisoner from the Oregon state penitentiary is removed under guard there is created a definite threat to the safety of the public because of the possibility of escape." The same type of argument

was employed by the Supreme Court of Missouri in sustaining as constitutional, over a strong dissent, a similar statute in *Ex parte Marmaduke,* 91 Mo 228, 4 SW 91, 60 Am Rep 250 (1886). But in the more recent case of *State ex rel. Rudolph v. Ryan,* 327 Mo 728, 38 SW2d 717 (1931), the court reconsidered the question, overruled the Marmaduke case, and held that the statute, if applied so as to prevent an accused from subpoenaing a witness from the penitentiary, violated the compulsory process provision of the Missouri Constitution. The court said of its prior decision:

"In the majority opinion in that case we held that the criminal court was without authority to issue a writ of habeas corpus ad testificandum to produce a prisoner under a sentence for a felony. In the main, we justified the ruling on the grounds of inconvenience and surmised interference with the control of the convicts in the penitentiary. Obviously, those grounds do not justify the ruling.

"In the concurring opinion, the ruling was justified by reasoning that the power of the Legislature, to disqualify a convict as a witness, authorized it to prohibit his removal from the penitentiary to testify as a witness. This would be sound reasoning, if the Legislature had so disqualified convicts. It has not done so. On the contrary, disqualification without exception was removed by the Legislature in 1879. And, by statutory authority, a convict's deposition may be taken in the penitentiary. Section 3621, Rev. St. 1929. Indeed, it was not contended in the Marmaduke Case that the convict was disqualified. It follows that the majority and concurring opinions in said case are in conflict with the section of the Constitution which gives circuit courts jurisdiction over criminal cases. Furthermore, in that case the process for the production of the witness was at the instance of the defendant. Therefore said opinions are also in conflict with section 22, art. 2 of the Constitution which provides that 'in

criminal prosecutions the accused shall have the right \* \* \* to have process to compel the attendance of witnesses in his behalf.' The majority and concurring opinions in that case should be and are overruled.''

This decision has the approval of Professor Wigmore. See 8 Wigmore on Evidence (3d ed) 111, note. The opinion is well-considered and is a correct interpretation of the constitutional guaranty of compulsory process.

Other courts have reached a contrary conclusion: *Tiner v. State,* 110 Ark 251, 161 SW 195; *Pirkle v. State,* 31 Ala App 464, 18 So2d 694. The California cases are cited as support for the attorney general's position; see, *Willard v. Superior Court,* 82 Cal 456, 22 P 1120; *People v. Putman,* 129 Cal 258, 61 P 961; *People v. Willard,* 92 Cal 482, 28 P 585; *Ex parte Bagwell,* 26 Cal2d 418, 79 P2d 395; but it is not entirely clear that these cases may be properly so considered. In any event, they are distinguishable because of a provision in the compulsory process clause of the Constitution of California, which gives the legislature power to provide for the taking of depositions in criminal cases other than cases of homicide.

The attorney general quotes from 28 RCL, Witnesses, 582 § 173, as follows: ''The constitutional right of a defendant to compulsory process for the attendance of witnesses is not violated by a statute which makes his right to a production of a witness confined in prison dependent upon the discretion of the court.'' This statement, while sound, carries no implication in favor of the validity of a statute which altogether deprives the accused of such right.

Courts have the inherent power to compel the attendance or production of witnesses. *State ex rel.*

*Rudolph v. Ryan,* supra. But it is one thing to attempt to deprive them of that power, quite a different thing to concede that a court has discretion to determine whether it is justified in ordering a person confined in prison to be brought to the courtroom to testify. At common law the writ of *habeas corpus ad testificandum* was issued for the production of such witnesses who were beyond the reach of an ordinary subpoena. This was a discretionary writ. *Neufield v. United States,* 118 F2d 375; *State ex rel. Rudolph v. Ryan,* supra; 8 Wigmore on Evidence (3d ed) 110; 1 Greenleaf on Evidence (16th ed) 473. Respecting it the Missouri court said in *State ex rel. Rudolph v. Ryan,* supra:

> "* * * However, it must be understood that the writ is grantable in the discretion of the court. Abuse of the process should not be permitted. On the hearing of the petition for the writ, the court should require strict proof of the materiality of the testimony and the necessity of the attendance of the prisoner as a witness. If it appears that the application is in good faith and the testimony is material and important, the petition for the writ should be granted."

In *Willard v. Superior Court,* supra, Chief Justice Beatty, discussing the guaranty of compulsory process in its relation to the problem of the production of witnesses from prison, said:

> "I feel very sure, however, that it does not mean, and that it never was intended, that on the mere demand of a defendant in a criminal action, any convict, or any number of convicts, must be transported from the state prison to the place of trial, as an essential prerequisite to proceeding with the trial. It is not possible that the court or judge to whom application is made has no discretion to ex-

amine the sufficiency of the grounds upon which it is based, and to deny it if in his opinion it ought to be denied."

By ORS 34.310 every other writ of habeas corpus than the writ of *habeas corpus ad subjiciendum* is abolished. ORS 44.230, to the extent that it authorizes the removal of witnesses confined in prison, was no doubt intended to perform the function of the writ of *habeas corpus ad testificandum*. But, inasmuch as it prescribes no procedure for securing the removal of a convicted felon from the state penitentiary for the purpose of giving testimony in a criminal action, I should suppose that the court, in the exercise of its inherent power to compel the attendance of witnesses, would be guided by the same considerations which directed the discretion of the common law courts in determining whether or not to issue the writ of *habeas corpus ad testificandum*.

In the present case it appears that the circuit judge, being satisfied with the showing made in behalf of the application of the accused, has ordered the witness to be produced at the trial. The judge had discretion to make this order and hence the mandamus proceeding should be dismissed.

WARNER, J., concurs in the foregoing opinion.